## UNITED STATES COURT OF INTERNATIONAL TRADE

_____
PT ECOS JAYA INDONESIA AND            )
PT GRANTEC JAYA INDONESIA,            )
                                      )
                   Plaintiffs,        )
                                      )
         v.                           )
                                      )
UNITED STATES,                        )
                                      )
                   Defendant,         )
                                      )
         and                          )        Before: Jennifer Choe-Groves, Judge
                                      )
BROOKLYN BEDDING, LLC, FXI, INC.      )        Court No. 24-00001
KOLCRAFT ENTERPRISES, INC., LEGGETT   )
& PLATT, INCORPORATED, THE            )
INTERNATIONAL BROTHERHOOD OF          )
TEAMSTERS, AND UNITED STEEL, PAPER    )
AND FORESTRY, RUBBER,                 )
MANUFACTURING, ENERGY, ALIED          )
INDUSTRIAL AND SERVICE WORKERS        )
INTERNATIONAL UNION, AFL-CIO,         )
                                      )
                   Defendant-Intervenors.  )
_____)

## ORDER

Upon consideration of the motion of Plaintiffs, PT Ecos Jaya Indonesia and PT Grantec

Jaya Indonesia, for judgment on the agency record pursuant to Rule 56.2 of the Rules of this

Court, and all other papers and proceedings herein; it is hereby:

**ORDERED** that Plaintiffs' motion is hereby granted; and it is further

**ORDERED** that the final results with respect to Mattresses from Indonesia:  Final

Results of Antidumping Duty Administrative Review; 2020-2022, 88 Fed. Reg. 85,240 (Dep't

Commerce Dec. 7, 2023), are hereby remanded to the U.S. Department of Commerce with

instructions to take such further action as required by the Court's decision in this matter with

respect to the final weighted-average antidumping duty rate calculated for and applied to PT

Ecos Jaya Indonesia and PT Grantec Jaya Indonesia.

      **SO ORDERED**.


By: _____

       The Hon. Jennifer Choe-Groves, Judge


Dated: _____
      New York, New York

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| PT ECOS JAYA INDONESIA AND<br>PT GRANTEC JAYA INDONESIA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | Before: Jennifer Choe-Groves, Judge |
| | ) | |
| BROOKLYN BEDDING, LLC, FXI, INC. | ) | Court No. 24-00001 |
| KOLCRAFT ENTERPRISES, INC., LEGGETT | ) | |
| & PLATT, INCORPORATED, THE | ) | |
| INTERNATIONAL BROTHERHOOD OF | ) | |
| TEAMSTERS, AND UNITED STEEL, PAPER | ) | |
| AND FORESTRY, RUBBER, | ) | |
| MANUFACTURING, ENERGY, ALIED | ) | |
| INDUSTRIAL AND SERVICE WORKERS | ) | |
| INTERNATIONAL UNION, AFL-CIO, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

## PLAINTIFFS' MOTION FOR JUDGMENT ON THE AGENCY RECORD PURSUANT TO RULE 56.2

Pursuant to Rule 56.2 of the Rules of the Court, PT Ecos Jaya Indonesia and PT Grantec Jaya Indonesia (collectively, "Plaintiffs") hereby move for judgment on the agency record with respect to its complaint challenging the final results of the U.S. Department of Commerce ("Commerce") antidumping administrative review in Mattresses from Indonesia:  Final Results of Antidumping Duty Administrative Review; 2020-2022, 88 Fed. Reg. 85,240 (Dep't Commerce Dec. 7, 2023) ("Final Results"), and accompanying unpublished Issues and Decision Memorandum (Dep't Commerce Dec. 1, 2023).  The administrative review covered U.S. entries of subject merchandise during the period November 3, 2020, through April 30, 2022.

Pursuant to Rule 56.2 and for the reasons explained in the accompanying memorandum, Plaintiffs respectfully move for the Court to hold that the contested portions of the <u>Final Results</u> are unsupported by substantial evidence on the record.  Plaintiffs further move for the Court to remand this matter to Commerce for disposition consistent with the order and opinion of the Court.

Respectfully submitted,

<u>/s/ Jarrod M. Goldfeder</u>
Jarrod M. Goldfeder
MacKensie R. Sugama

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C.  20003
(202) 223-3760

Dated:  May 20, 2024                    *Counsel to Plaintiffs*

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| PT ECOS JAYA INDONESIA AND<br>PT GRANTEC JAYA INDONESIA, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | Before: Jennifer Choe-Groves, Judge |
| ) | |
| BROOKLYN BEDDING, LLC, FXI, INC. ) | Court No. 24-00001 |
| KOLCRAFT ENTERPRISES, INC., LEGGETT ) | |
| & PLATT, INCORPORATED, THE ) | |
| INTERNATIONAL BROTHERHOOD OF ) | |
| TEAMSTERS, AND UNITED STEEL, PAPER ) | |
| AND FORESTRY, RUBBER, ) | |
| MANUFACTURING, ENERGY, ALIED ) | |
| INDUSTRIAL AND SERVICE WORKERS ) | |
| INTERNATIONAL UNION, AFL-CIO, ) | |
| ) | |
| Defendant-Intervenors. ) | |

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel at Trade Pacific PLLC hereby certifies that the Memorandum of Law in Support of Plaintiffs' Motion for Judgment Upon the Agency Record, dated May 20, 2024, complies with the word-count limitation described in part 2(B)(1) of the Court's Standard Chambers Procedures.  The memorandum of law contains <u>4,862 words</u> according to the word-count function of the word-processing software used to prepare the memorandum, excluding the table of contents, table of authorities, and counsel's signature block.

Respectfully submitted,

/s/ Jarrod M. Goldfeder
Jarrod M. Goldfeder
**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C.  20003
(202) 223-3760

Dated:  May 20, 2024

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| PT ECOS JAYA INDONESIA AND | ) | |
| PT GRANTEC JAYA INDONESIA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | Before: Jennifer Choe-Groves, Judge |
| | ) | |
| BROOKLYN BEDDING, LLC, FXI, INC. | ) | Court No. 24-00001 |
| KOLCRAFT ENTERPRISES, INC., LEGGETT | ) | |
| & PLATT, INCORPORATED, THE | ) | |
| INTERNATIONAL BROTHERHOOD OF | ) | |
| TEAMSTERS, AND UNITED STEEL, PAPER | ) | |
| AND FORESTRY, RUBBER, | ) | |
| MANUFACTURING, ENERGY, ALIED | ) | |
| INDUSTRIAL AND SERVICE WORKERS | ) | |
| INTERNATIONAL UNION, AFL-CIO, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

## MEMORANDUM OF PLAINTIFFS, PT ECOS JAYA INDONESIA AND PT GRANTEC JAYA INDONESIA, IN SUPPORT OF MOTION FOR JUDGMENT UPON THE AGENCY RECORD

Jarrod M. Goldfeder
MacKensie R. Sugama

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C. 20003
(202) 223-3760

Dated: May 20, 2024                *Counsel to Plaintiffs*

## TABLE OF CONTENTS

I.   STATEMENT PURSUANT TO RULE 56.2(c) ................................................ 1

     A.   Administrative Determination Under Review ................................. 1

     B.   Issues Presented .......................................................................... 1

II.  STATEMENT OF FACTS .................................................................... 2

III. STANDARD OF REVIEW .................................................................... 6

IV.  SUMMARY OF ARGUMENT .............................................................. 7

V.   ARGUMENT .......................................................................................... 8

     A.   Commerce's Decision to Calculate CV Profit and Selling Expenses and CEP
          Profit Using Financial Data Dissimilar to the Operations and Customer
          Bases of Plaintiffs Is Not Supported by Substantial Evidence ........................ 8

          1.   Legal Framework ........................................................................ 9

          2.   Commerce Failed to Address Record Evidence Demonstrating KEL's
               Dissimilar Business Operations and Customer Bases ........................ 11

          3.   Commerce Failed to Provide an Analysis Specific to this Administrative
               Review ........................................................................................ 14

     B.   Commerce's Decision to Correct a Calculation Error Was Not Supported by
          Substantial Evidence .......................................................................... 15

VI.  CONCLUSION ........................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i)...................................................................................6

19 U.S.C. § 1675(h) ...............................................................................................16

19 U.S.C. § 1677b(e)(2)(B) .....................................................................................9

19 U.S.C. § 1677f(i)(3)(A) .......................................................................................7

**Regulations**

19 C.F.R. § 351.224(f) ......................................................................................15, 16

**Court Cases**

Burlington Truck Lines, Inc. v. United States, 371 U.S. 156 (1962) .......................7

Daewoo Elecs. Co. v. Int'l Union of Elec., Tech., Salaried & Mach. Workers, AFL-CIO,
6 F.3d 1511 (Fed. Cir. 1993).............................................................................. 6-7

Gallant Ocean (Thailand) Co. v. United States, 602 F.3d 1319 (Fed. Cir. 2010)...........................6

Geum Poong Corp. v. United States, 193 F. Supp. 2d 1363 (Ct. Int'l Trade 2002) .....................10

Mazak Corp. v. United States, 659 F.Supp.2d 1352 (Ct. Int'l Trade 2009) .................................16

Mid Continent Nail Corp. v. United States, 999 F. Supp. 2d 1307 (Ct. Int'l Trade 2014)............10

Mosaic Company v. United States, 659 F.Supp.3d 1285 (Ct. Int'l Trade 2023)..........................16

Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29 (1983)..7

N.L.R.B. v. Columbian Enameling & Stamping Co., 306 U.S. 292 (1939)..................................6

NMB Sing. Ltd. v. United States, 557 F.3d 1316 (Fed. Cir. 2009) ................................................7

Nucor Corporation v. United States, 461 F.Supp.3d 1374 (Ct. Int'l Trade 2020).........................7

SeAH Steel Corp. v. United States, 513 F. Supp. 3d 1367 (Ct. Int'l Trade 2021) .......................10

Stein Industries Inc. v. United States, 365 F. Supp. 3d 1364 (Ct. Int'l Trade 2019).....................7

Universal Camera Corp. v. N.L.R.B., 340 U.S. 474 (1951) ..........................................................6

**Commerce Determinations**

Mattresses from Indonesia:  Final Affirmative Determination of Sales at Less Than Fair Value, 86 Fed. Reg. 15,899 (Dep't Commerce Mar. 25, 2021), and accompanying Issues and Decision Memorandum (Dep't Commerce Mar. 18, 2021).........................................................................14

Mattresses from Indonesia: Final Results of Antidumping Duty Administrative Review; 2020-2022, 88 Fed. Reg. 85,240 (Dep't Commerce Dec. 7, 2023), and accompanying Issues and Decision Memorandum (Dep't Commerce Dec. 4, 2023).................................................... *passim*

Notice of Final Determination of Sales at Not Less Than Fair Value:  Certain Color Television Receivers from Malaysia, 69 Fed. Reg. 20,592 (Dep't Commerce Apr. 16, 2004) ......................10

Notice of Final Determination of Sales at Less Than Fair Value:  Pure Magnesium from Israel, 66 Fed. Reg. 49,349 (Dep't Commerce Sept. 27, 2001).............................................................10

Case No. 24-00001

## MEMORANDUM IN SUPPORT OF MOTION FOR
## JUDGMENT UPON THE AGENCY RECORD

Plaintiffs, PT Ecos Jaya Indonesia and PT Grantec Jaya Indonesia (hereinafter, "Plaintiffs" or "Ecos/Grantec"), hereby submit this Memorandum in Support of their Motion for Judgment on the Agency Record in accordance with Rule 56.2(c) of the Rules of this Court.  For the reasons set forth below, Plaintiffs respectfully request that the Court reverse the challenged determination of the U.S. Department of Commerce ("Commerce"), and remand with instructions consistent with this Memorandum and the Court's findings.

## I.    STATEMENT PURSUANT TO RULE 56.2(c)

### A.    Administrative Determination Under Review

This action is an appeal from Commerce's final results in <u>Mattresses from Indonesia: Final Results of Antidumping Duty Administrative Review; 2020-2022</u>, 88 Fed. Reg. 85,240 (Dep't Commerce Dec. 7, 2023) ("<u>Final Results</u>"), PD 241, and accompanying Issues and Decision Memorandum for the Final Results of the 2020-2022 Antidumping Duty Administrative Review:  Mattresses from Indonesia (Dep't Commerce Dec. 4, 2023) ("<u>Final Decision Memo</u>"), PD 233.[1]

### B.    Issues Presented

Plaintiffs request that this Court hold that the <u>Final Results</u> are unsupported by substantial evidence and that the Court remand the <u>Final Results</u> with instructions to issue a new determination that is consistent with the Court's decision.  The Plaintiffs seek judgment on the agency record with respect to the following issues:

---

[1]    Throughout this brief, citations to the public administrative record filed with this Court are referenced "PD __" and citations to the confidential record are referenced "CD __."

1

Case No. 24-00001

1.      Whether Commerce's determination to calculate ratios for constructed value ("CV") profit and selling expenses and constructed export price ("CEP") profit based on the average of two different surrogate sources, Masterfoam Industries Sdn. Bhd. ("Masterfoam") and Kurlon Enterprise Limited ("KEL"), was supported by substantial evidence.

2.      Whether Commerce's rejection of Ecos/Grantec's ministerial error allegation, which raised an adjustment error in Commerce's calculation of the CV profit and selling expense ratios for Masterfoam, was supported by substantial evidence.

## II.    <u>STATEMENT OF FACTS</u>

Because Plaintiffs did not have a viable home market or third-country market during this period of review ("POR"), Commerce used CV for price comparison purposes.  <u>See</u> <u>Final Decision Memo</u>, at 11.  Furthermore, Ecos/Grantec made certain U.S. sales on a CEP basis, which required Commerce to deduct profit as part of the net U.S. price calculations.  <u>Id.</u>, at 14.

On September 29, 2022, Commerce provided all interested parties the opportunity to submit comments and information for the purpose of determining CV profit and selling expenses.  <u>See</u> Commerce Memorandum, re: "Request for Constructed Value Profit and Selling Expense Comments and Information" (Sept. 29, 2022), PD 54.  On October 20, 2022, Plaintiffs and other interested parties submitted CV profit and selling expense comments and information for Commerce's consideration.  Among other sources, Plaintiffs submitted the 2021 financial statements of Masterfoam, a Malaysian producer of mattresses.  <u>See</u> Letter from Trade Pacific, "CV Profit and Selling Expense Comments and Information" (Oct. 20, 2022) ("Ecos/Grantec CV Profit Letter"), at Exhibit CV-5, PD 73-81.  As explained in their submission, Masterfoam is an original equipment manufacturer ("OEM") of mattresses—i.e., identical merchandise—for other companies located all over the world, and it shares similar customers bases to those of

Case No. 24-00001

Ecos/Grantec (i.e., sales to retailers and distributors).  Id.  Neither Masterfoam's website nor its financial statements discuss any land or rental for brick and mortar or retail stores.  Furthermore, the only facility that Masterfoam owned is its production facility located in Malaysia.  Id.

Petitioners submitted the 2021 financial statements of KEL, a large Indian retail conglomerate which operates several well-known mattress brands, such as Spring Air, Englander, and Chattam and Wells, as well as numerous brick-and-mortar stores.  See Letter from Cassidy Levy Kent, "Mattress Petitioners' Comments and Factual Information Concerning CV Profit and Selling Expenses" (Oct. 20, 2022), at Exhibit 3-B, p. 51 of KEL's Annual Report, PD 87.  More specifically, the company's annual report describes its large network of retail and direct to consumer channels:  it operates through 6,000 dealers and 86 company owned and operated stores, franchises, large format retail outlets, and multi-brand outlets.  Id., at Exhibit 3-B, p. 52 of KEL's Annual Report.  KEL also sells its branded merchandise directly to consumers through its e-commerce platform.  Id.

In its Preliminary Results, Commerce calculated CV profit and selling expense and CEP profit ratios using the financial statements of both Masterfoam and KEL.  See Mattresses from Indonesia:  Preliminary Results of Antidumping Duty Administrative Review; 2020-2022, 88 Fed. Reg. 37,027 (Dep't Commerce June 6, 2023) ("Preliminary Results"), PD 174, and accompanying Issues and Decision Memorandum (May 31, 2023) ("Prelim. Decision Memo"), at 15, PD 175.  More specifically, Commerce calculated a simple average of ratios after calculating individual CV/CEP profit and selling expense ratios for each company as follows:

| Company | CV/CEP Profit | CV Selling Expenses | Total |
|---|---|---|---|
| Masterfoam | 3.70% | 2.79% | 6.49% |
| Kurlon Enterprise | 12.87% | 14.23% | 27.10% |
| Applied Average | *8.28%* | *8.51%* | ***16.79%*** |

Case No. 24-00001

<u>See</u> Memorandum to Taija Slaughter, Director, Office of Accounting, "Cost of Production and

Constructed Value Calculation Adjustments for the Preliminary Results – PT Ecos Jaya

Indonesia and PT Grantec Jaya Indonesia" (May 31, 2023) ("Prelim. Calc. Memo"), at 3 and

Attachment 2, PD 178.  Commerce calculated a preliminary antidumping duty margin of 10.39

percent *ad valorem* for Plaintiffs.  <u>See</u> <u>Preliminary Results</u>, 88 Fed. Red. 37,027.  As part of its

preliminary analysis, Commerce acknowledged that, unlike Ecos/Grantec, KEL is directly

involved in retail sales and marketing of mattresses and bedding products, but it found that those

sales and marketing activities are not unusual for a company engaged in the manufacturing and

sales of mattresses and bedding products.  <u>See</u> <u>Prelim. Decision Memo</u>, at 15.

     After considering parties' case and rebuttal briefs, on December 1, 2023, Commerce

issued its <u>Final Results</u>, calculating a final weighted-average antidumping duty margin of 8.40

percent *ad valorem* for Plaintiffs.  <u>See</u> <u>Final Results</u>, 88 Fed. Reg. 85,240.  After making certain

adjustments to its methodology, Commerce continued to apply CV profit and selling expense and

CEP profit ratios based on a simple average of the ratios calculated for Masterfoam and KEL:

| Company | CV/CEP Profit | CV Selling Expenses | Total |
|---|---|---|---|
| Masterfoam | 2.40% | 2.79% | 5.19% |
| Kurlon Enterprise | 12.87% | 6.20% | 19.07% |
| Applied Average | *7.64%* | *4.49%* | ***12.13%*** |

<u>See</u> <u>Final Decision Memo</u>, at 11–18.

     In its <u>Final Results</u>, Commerce revised the profit rate calculations for Masterfoam to

exclude investment-related items.  <u>See</u> Commerce Memorandum, re: "Final Results Margin

Calculation" (Dec. 1, 2023) ("Final Margin Calc. Memo"), at 2 and Attachment 2, PD 234.

Specifically, Commerce described the following two adjustments to Masterfoam's calculated

profit ratios:

Case No. 24-00001

- We revised the calculations of Masterfoam's CV/CEP profit ratio by excluding investment-related activities (*i.e.*, dividends from associates and subsidiaries). As a result, Masterfoam's CV/CEP profit ratio changed to 2.40 percent, and the simple average profit ratio changed to 7.64 percent. *See* Comment 1 for further discussion.

- We revised the calculation of Kurlon Enterprise's CV selling expense ratio by removing freight and handling charges and warranty expenses (as applicable), to avoid double counting expenses that the respondents reported in their U.S. sales databases. We also revised the calculation of Masterfoam's CV selling expense ratio applied to both respondents as a result of the revision made to the CV/CEP profit ratio as discussed above. *See* Comment 1 for further discussion.

<u>Final Decision Memo</u>, at 5. Elsewhere, Commerce provided the following details concerning its

revisions:

### CV and CEP Profit Ratios

We continued to rely on the financial data of Kurlon Enterprise and Masterfoam to derive the CV and CEP profit ratios in the final results. However, we adjusted the CV/CEP profit ratio calculated for Masterfoam in the preliminary results by removing dividends from associates and dividends from subsidiary from the other income applied to calculate profit before taxes (*see* Attachment 2 for the revised CV and CEP profit ratio calculation). *See* lines 785 and 1809 of the SAS program.

PRATECV = **0.0764**;

### Selling Expense Ratio (used for CV and CEP profit)

We adjusted the CV selling expense ratio calculated for Masterfoam by using the revised total cost of production (noted above for calculating the CV/CEP profit ratio). We also adjusted the CV selling expense ratio calculated for Kurlon Enterprise used in the preliminary results by deducting freight and warranty expenses from the total selling expense figure. Attachment 2 provides the CV selling expense calculation. *See* line 1798 of the SAS program.

ISELCVR = **0.0449**;

Commerce Memorandum to The File, re: "Final Results Margin Calculation for PT Ecos Jaya

Indonesia and PT Grantec Jaya Indonesia" (Dec. 1, 2023), at 2, PD 234.

Case No. 24-00001

As described, Commerce reduced Masterfoam's profit amount by the dividend income earned from associates and subsidiaries—which had been included in the general and administrative ("G&A") calculation as "Other Income." Id. However, in making this adjustment to Masterfoam's profit, Commerce inadvertently failed to reduce the COGS denominator of the CV profit and selling expense ratio—which includes both G&A and Other Income—by the same dividends in the denominator. Given this error, Plaintiffs timely submitted a ministerial error allegation on December 11, 2023, requesting that Commerce corrected the calculation error. See Letter from Trade Pacific, re: "Ministerial Error Allegation" (Dec. 11, 2023), PD 242-43. However, on January 8, 2024, Commerce declined to accept Plaintiffs' ministerial error allegation. See Commerce Memorandum, re: "Allegation of a Ministerial Error in the Final Results," (Jan. 8, 2024), PD 246. This appeal subsequently followed.

## III.    STANDARD OF REVIEW

The governing statute provides that the Court shall hold unlawful and remand any administrative determination by Commerce that is "unsupported by substantial evidence on the record." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 477 (1951). It must be "more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established." N.L.R.B. v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300 (1939). The Court "looks to the record as a whole, including any evidence that fairly detracts from the substantiality of the evidence," Gallant Ocean (Thailand) Co. v. United States, 602 F.3d 1319, 1323 (Fed. Cir. 2010) (internal quotation marks and citation omitted), and determines "whether the evidence and reasonable inferences from the record support {the agency's} finding." Daewoo Elecs. Co. v. Int'l Union of

Case No. 24-00001

Elec., Tech., Salaried & Mach. Workers, AFL-CIO, 6 F.3d 1511, 1520 (Fed. Cir. 1993) (internal

quotation marks and citation omitted).  Commerce must provide a "rational connection between

the facts found and the choice made," Burlington Truck Lines, Inc. v. United States, 371 U.S.

156, 168 (1962), and "examine the relevant data and articulate a satisfactory explanation for its

action."  Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29,

30 (1983).

Commerce also is required by law to include in its final results "an explanation of the

basis for its determination that addresses relevant arguments{ } made by interested parties who

are parties to the investigation or review." 19 U.S.C. § 1677f(i)(3)(A).  See also NMB Sing. Ltd.

v. United States, 557 F.3d 1316, 1319 (Fed. Cir. 2009).  Furthermore, the Court will not sustain

Commerce's determination when Commerce failed to address a party's relevant argument.  See

Nucor Corporation v. United States, 461 F.Supp.3d 1374, 1380 (Ct. Int'l Trade 2020) (citing

Stein Industries Inc. v. United States, 365 F. Supp. 3d 1364, 1371 (Ct. Int'l Trade 2019)).

## IV.    SUMMARY OF ARGUMENT

Commerce's Final Results were unsupported by substantial record evidence in the

following respects.

1)    Commerce's determination to calculate CV profit and selling expense and CEP

profit ratios based on the average of two different surrogate sources Masterfoam and KEL was

unsupported by substantial evidence demonstrating that KEL was an unsuitable and less similar

source of CV profit and selling expenses.  Specifically, KEL's company information and

financial data revealed substantial dissimilar business operations and sales channels to those of

Ecos/Grantec.  Accordingly, the inclusion of KEL's financial data in calculating the CV and CEP

profit ratios introduced distortions and inaccuracies into the weighted-average AD calculations.

7

2)    Commerce's rejection of Ecos/Grantec's ministerial error allegation, which raised an adjustment error in Commerce's calculation of the CV profit and selling expense ratios for Masterfoam, was unsupported by substantial evidence.  Ecos/Grantec timely filed a ministerial error allegation demonstrating that Commerce failed to adjust the cost of goods sold ("COGS") denominator of Masterfoam by the same amount of dividends that it deducted from the numerator.  Commerce's subsequently rejected Ecos/Grantec's ministerial error by finding that its CV profit and selling expense calculations did not contain any adjustment errors.  However, based on substantial evidence, as well as simple mathematics, Commerce's rejection of Ecos/Grantec's ministerial error and refusal to correct its mistake was unreasonable and should be remanded.

## V.    ARGUMENT

### A.    Commerce's Decision to Calculate CV Profit and Selling Expenses and CEP Profit Using Financial Data Dissimilar to the Operations and Customer Bases of Plaintiffs Is Not Supported by Substantial Evidence

Commerce's decision to calculate CV profit and selling expenses and CEP profit using the financial data of KEL, which bears no resemblance to the business operations, selling channels, and overall profit experience of Ecos/Grantec, was unsupported by substantial evidence.  Although Plaintiffs argued before Commerce that KEL's retail structure, business operations, and selling channels are entirely dissimilar to those of Ecos/Grantec, Commerce failed to address these obvious distinctions adequately.  Instead, Commerce broadly cited to its reliance on mattress retailers as surrogate source for CV profit in prior cases—which involved surrogate sources and evidence not contained in this administrative record—to support its contention that KEL is a suitable source of CV profit and selling expenses and CEP profit.

Case No. 24-00001

### 1.   __Legal Framework__

In the absence of comparison market sales made in the ordinary course of trade for

calculating CV profit and selling expenses, Commerce must rely on one of the three alternatives

outlined in 19 U.S.C. § 1677b(e)(2)(B)(i) through (iii):

(i)   the actual amounts incurred and realized by the specific exporter or
producer being examined in the investigation or review for . . . selling
expenses and profits, in connection with the production and sale, for
consumption in the foreign country, of merchandise that is in the same
general category of products as the subject merchandise,

(ii)   the weighted average of the actual amounts incurred and realized by
exporters or producers that are subject to the investigation or review (other
than the exporter or producer described in clause (i)) . . . for selling
expenses and profits, in connection with the production and sale of a
foreign like product, in the ordinary course of trade, for consumption in
the foreign country, or

(iii)   the amounts incurred and realized . . . for selling expense and profits,
based on any other reasonable method, except that the amount allowed for
profit may not exceed the amount normally realized by exporters or
producers (other than the exporter or producer described in clause (i)) in
connection with the sale, for consumption in the foreign country, of
merchandise that is in the same general category of products as the subject
merchandise; (i.e., the "profit cap").

Because Commerce's preferred methods for calculating CV profit under 19 U.S.C. §§

1677b(e)(2)(B)(i) and (ii) were not available, Commerce relied on the "any reasonable method"

alternative as described under the third statutory provision by selecting from available financial

statements from surrogate producers on the record.

Commerce has established four criteria for evaluating surrogate sources of CV profit and

selling expenses under the "any reasonably method" alternative:

(1)   the similarity of the potential surrogate companies' business operations
and products to the respondent's business operations and products;

(2)   the extent to which the financial data of the surrogate company reflects
sales in the home market and does not reflect sales to the United States;

Case No. 24-00001

     (3)     the contemporaneity of the data to the POI; and

     (4)     the extent to which the customer base of the surrogate company and the respondent is similar (e.g., original equipment manufacturers versus retailers).

See, e.g., Notice of Final Determination of Sales at Less Than Fair Value:  Pure Magnesium from Israel, 66 Fed. Reg. 49,349 (Dep't Commerce Sept. 27, 2001) ("Pure Magnesium from Israel"); Notice of Final Determination of Sales at Not Less Than Fair Value:  Certain Color Television Receivers from Malaysia, 69 Fed. Reg. 20,592 (Dep't Commerce Apr. 16, 2004) ("CCTVs from Malaysia") (collectively, "Pure Magnesium/CCTV Criteria").

     This Court has established that "the goal in calculating CV profit is to approximate the home market profit experience." Geum Poong Corp. v. United States, 193 F. Supp. 2d 1363, 1370 (Ct. Int'l Trade 2002).  In applying its four-factor criteria, Commerce "consistently takes the position that '{t}he greater the similarity in business operations and products, the more likely that there is greater correlation in the profit experience of the companies.'" Mid Continent Nail Corp. v. United States, 999 F. Supp. 2d 1307, 1324 (Ct. Int'l Trade 2014).  As such, the Court has found that the objective when using the third alternative method of "any other reasonable method" is "to find a good proxy (or surrogate) for the profits that the respondent can fairly be expected to build into a fair sales price of the particular merchandise." SeAH Steel Corp. v. United States, 513 F. Supp. 3d 1367, 1396 (Ct. Int'l Trade 2021).

     In a continuous effort to find the "best fit" proxy that best represents the profit experience of the respondent companies, Commerce has sought to correct any inconsistencies by adjusting for possible distortions or by choosing a different surrogate company.  See Mid Continent Nail, 999 F. Supp. 2d at 1324 (explaining that Commerce preliminarily chose one surrogate company but ultimately used another company's financial statements to calculate CV profit because its "business operations and products appear{ed} to be more similar to the respondents . . .").

Case No. 24-00001

### 2.    Commerce Failed to Address Record Evidence Demonstrating KEL's Dissimilar Business Operations and Customer Bases

In response to Plaintiffs' arguments that KEL fails half of the Pure Magnesium/CCTV Criteria by having dissimilar business operations and customer bases, Commerce failed to provide any analysis or comparison of KEL to the actual operations of Ecos/Grantec.  Instead, Commerce broadly cited to the "usual" and "appropriate" activities of mattress manufacturers in general to support its use of KEL as a surrogate source of CV and CEP profit.  See Final Decision Memo, at 13–14.

Commerce's conclusory statement that KEL's retail activities are "not unusual activities for a company engaged in the manufacturing and sales of mattresses and bedding products" is entirely reductive and failed to consider the basic differences in selling channels and distribution networks of manufacturers.  Id.  OEMs, such as Ecos/Grantec and Masterfoam, manufacture mattresses at their factories using specifications and incorporating brands as requested by their customers.  See Ecos/Grantec CV Profit Letter, at Exhibit CV-5; Response from Trade Pacific PLLC, re: "Section A Questionnaire Response" (Sept. 14, 2022) ("Sec. A Resp."), at Exhibits A-10 and A-11, CD 23–43, PD 40.  They subsequently sell mattresses to retailers and distributors, who in turn sell the product to other downstream retailers, or to end customers.  In other words, these small, OEM manufacturers are not fully integrated down the selling chain:  they do not sell directly to customers; do not operate their own "brick-and-mortar" stores; do not manage or operate their own brands or e-commerce platforms; nor do they have any interaction with the final end customer.

On the other hand, some mattress manufacturers, such as KEL, are fully integrated all the way through the selling chain.  That is, they manufacture and sell their products directly to end customers through their online marketplace, or through physical brick-and-mortar locations.  The

Case No. 24-00001

profit experience, as well as incurred selling expenses, of such fully integrated mattress companies obviously differs starkly from that of OEM manufacturers, which do not manage any downstream selling or advertising of their products.

While Commerce asserts that such "selling and marketing activities" are "not unusual" when compared to other mattress manufacturers generally, it entirely dismisses the fact that **it is highly unusual** for an OEM manufacturer.  See Final Decision Memo, at 13–14.  Furthermore, Commerce's analysis is misplaced.  Under the statute and Commerce's developed criteria, it should be examining whether such selling and marketing activities are unusual **when compared to those of the mandatory respondents**, i.e., Ecos/Grantec.  However, Commerce focused on a comparison of the activities of a surrogate source to the broader activities of the industry as a whole, which was unreasonable considering that the mattress manufacturing industry has a broad array of companies with different business operations, selling channels, and customer bases. This is precisely the reason why Commerce developed the Pure Magnesium/CCTV Criteria, which helps to approximate the situation of respondents being reviewed.  These criteria were not developed as a general assessment of what is "usual" for a broadly defined industry.  Thus, Commerce failed to base its analysis on the realities of what is usual for the specific mandatory respondent in question (i.e., Ecos/Grantec).

The dissimilarities in business operations between KEL versus Ecos/Grantec are further pronounced when reviewing their respective calculated ratios.  First, the difference in selling operations is especially obvious when comparing the selling expense ratios of each company:

| ECOS/GRANTEC | Masterfoam | Kurlon Enterprise |
|---|---|---|
| 2.17% | 2.79% | 6.20% |

See Ecos/Grantec CV Profit Letter, at Exhibit CV-2; see also Final Margin Calc. Memo, at Attachment 2.  Indeed, roughly half of KEL's selling expenses, used as the numerator in the

Case No. 24-00001

selling expense ratio calculation, was derived from "advertisement, promotion, and selling expenses." Id. (KEL reported 3,444 Indian Lakh in advertising expenses, out of a total of 9,623.07 Indian Lakh in selling expenses). It is unsurprising that KEL's selling expense ratio is **triple** that of Masterfoam's and Ecos/Grantec's because, as explained above, neither company operates an online marketplace nor has retail stores. Furthermore, Commerce calculated a CV/CEP profit ratio of 2.40% for Masterfoam but a rate more than **five times higher** for KEL (12.87%). See Final Margin Calc. Memo, at Attachment 2. The calculated CV and CEP profit rate for Ecos/Grantec based on their 2021 financial statements was 1.74%. See Ecos/Grantec CV Profit Letter, at Exhibit CV-1 and Exhibit CV-2. Given the different business structure and expenses, it was unreasonable for Commerce to include KEL's profit rate, which was so much higher than that of Masterfoam and Ecos/Grantec reflecting the fact that this company has very different operations and corresponding financial structure.

Finally, in explaining its decision to continue to rely on KEL as surrogate source for calculating CV profit and selling expense ratios, Commerce did not engage in any comparison of Ecos/Grantec's business operations and customer bases to those of KEL's. Commerce did not cite any factual circumstances of Ecos/Grantec's business, selling operations, or customers placed on the record. Under the Pure Magnesium/CCTV Criteria, Commerce's practice requires an analysis of both the "similarity" of business operations and "the extent to which the customer base of the surrogate company and the respondent is similar (e.g., original equipment manufacturers versus retailers." Commerce made no such comparison of KEL to the record evidence submitted by Ecos/Grantec on its business operations and sales practices. Rather, Commerce compared KEL to mattress companies in general. Even more egregious, Commerce's last criteria concerning customer bases even contemplates the scenario directly presented to

Case No. 24-00001

Commerce in this case, in which an OEM manufacturer is being compared to that of a retailer. Yet, Commerce seemingly ignored its own adopted criteria by entirely disregarding the dissimilarities of Ecos/Grantec and KEL. For these reasons, Commerce's determination was unreasonable and unsupported by substantial record evidence.

### 3. Commerce Failed to Provide an Analysis Specific to this Administrative Review

Commerce broadly cited its decision in the underlying investigation of this case—in which Plaintiffs were not a mandatory respondent—to support its use of KEL as a surrogate source of CV and CEP profit. See Final Decision Memo, at 13–14.

In the underlying investigation of this administrateive review, Commerce relied on the financial statements of Emirates Sleep Private Limited ("Emirates") to calculate CV profit and selling expenses. See Final Decision Memo, at 13; see also Mattresses from Indonesia: Final Affirmative Determination of Sales at Less Than Fair Value, 86 Fed. Reg. 15,899 (Dep't Commerce Mar. 25, 2021), and accompanying Issues and Decision Memorandum (Dep't Commerce Mar. 18, 2021), at 24. Similar to KEL, Emirates is engaged in retail operations and generates revenue "through sales of services which are intercompany charges for providing advertising, marketing, and promotional services related to retail operations." Final Decision Memo, at 13. In this administrateive review, Commerce reasons that because it has relied on a retail-dominant source for calculating CV profit and selling expense ratios in the past, it is justified in doing the same here. Id.

As an initial matter, Ecos/Grantec were not mandatory respondents in the underlying investigation. Moreover, Emirates was not proffered as a source of CV profit and selling expenses in this review. Thus, by citing a different source used in the investigation, applied to a different mandatory respondent with different operations, Commerce unreasonably justified its

14

Case No. 24-00001

use of a separate, surrogate source for new mandatory respondents in this review.  Commerce's
reliance on its practice in the investigation is obviously not instructive here when Ecos/Grantec,
as new mandatory respondents, operate as OEMs without any retail operations and had little to
no advertising and selling expenses.  See Sec. A Resp., at Exhibit APPX-1 and APPX-2.  Again,
Commerce cannot say that "marketing and promotion" activities are an "appropriate activity" for
a company engaged in the manufacturing and sale of mattresses, without addressing the factual
circumstances of the sales and business operations of the mandatory respondents which show
otherwise.  See Final Decision Memo, at 13.

    Taken together, Commerce erred by including KEL as a source of surrogate CV profit
and selling expenses and CEP profit.  Record evidence demonstrates that, as a retailer, KEL's
business operations, selling channels, and customer bases are entirely dissimilar to those of
Plaintiffs.  Commerce failed to provide any analysis or comparison of the business operations of
KEL to those of Ecos/Grantec, and instead it broadly relied on its rationale used in the
investigation of this case.  Commerce's decision to base the CV profit and selling expenses on
the financial results of KEL, therefore, was unreasonable and unsupported by substantial
evidence.

    **B.    Commerce's Decision to Correct a Calculation Error Was Not Supported by
            Substantial Evidence**

    As explained in the "Statement of Facts," Plaintiffs brought to Commerce's attention an
unintentional error that plainly met the definition of a "ministerial error" as defined by 19 C.F.R.
§ 351.224(f) based on a simple calculation error.  Commerce's rejection of Plaintiffs' allegation
and refusal to correct a calculation error was unsupported by substantial evidence.

    The statute requires that Commerce "ensure opportunity for interested parties to present
their views regarding any {ministerial} errors."  The statute and Commerce's applicable

15

Case No. 24-00001

regulation define a ministerial error as any "addition, subtraction, or other arithmetic function, clerical errors resulting from inaccurate copying, duplication or the like, and any other type of unintentional error which the administering authority considers ministerial." 19 U.S.C. § 1675(h); 19 C.F.R. § 351.224(f). Ministerial errors include those there merely require Commerce to "mathematically adjust a particular rate." Mazak Corp. v. United States, 659 F.Supp.2d 1352, 1362 (Ct. Int'l Trade 2009).

      Commerce's calculated CV profit and selling expense ratios failed to reflect a mathematically correct methodology. Specifically, Commerce reduced Masterfoam's profit amount by the dividend income earned from associates and subsidiaries—which had been included in the G&A calculation as "Other Income"—but failed to reduce the COGS denominator (which includes both G&A and Other Income) by the same dividends in the denominator of the profit and selling expense ratios. Ecos/Grantec's alleged ministerial error was undoubtedly "ministerial." This Court has previously held that similar, if not identical, errors to be ministerial. In Mosaic Company v. United States, the Court remanded to Commerce reconsider an alleged ministerial error as to its method of determining a profit rate when Commerce's profit rate calculation methodology "failed to achieve an apples-to-apples comparison internally because the numerator is not on the same basis as the denominator." Mosaic Company v. United States, 659 F.Supp.3d 1285, 1305 (Ct. Int'l Trade 2023) (emphasis added).

      Yet, when presented with this error, Commerce refused to correct it, claiming that, although Masterfoam's financial statements at note 19 indicated the company's profit before taxation—reflecting the investment-related items at issue—Masterfoam's statements did not specify which income statement line item reflects this investment related income. See Allegation

Case No. 24-00001

of a Ministerial Error in the Final Results, at 3, PD 246.  Based on an equal "apples to apples"

calculation, Commerce's explanation is irrelevant.  Rather, because Commerce excluded

dividend incomes from G&A as "Other Income," Commerce should have also reduced the

COGS denominator by the same dividends.  In other words, Commerce should have amended the

Final Results by adjusting the COGS denominator by the same amount of dividends that it

deducted from the numerator.  Commerce unreasonably failed to do so.

Accordingly, Commerce's rejection of Plaintiffs plain ministerial error was unsupported

by substantial evidence.  Plaintiffs respectfully request that the Court remand the Final Results so

that Commerce can correct its inadvertent calculation error.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion

for Judgment on the Agency Record and remand this case to Commerce with instructions

consistent with the points set forth in this Memorandum.

Respectfully submitted,

/s/ Jarrod M. Goldfeder
Jarrod M. Goldfeder
MacKensie R. Sugama

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C.  20003
(202) 223-3760

Dated:  May 20, 2024                    *Counsel to Plaintiffs*