## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| PT ECOS JAYA INDONESIA AND PT GRANTEC JAY INDONESIA, | ) ) ) |
| Plaintiffs, | ) ) |
| and | ) ) |
| BROOKLYN BEDDING, LLC, FXI, INC., KOLCRAFT ENTERPRISES INC., LEGGETT & PLATT, INCORPORATED, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AND UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, | ) ) ) ) ) ) ) ) ) ) |
| Consolidated-Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| BROOKLYN BEDDING, LLC, FXI, INC., KOLCRAFT ENTERPRISES INC., LEGGETT & PLATT, INCORPORATED, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AND UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, | ) ) ) ) ) ) ) ) ) |
| Defendant-Intervenors. | ) ) ) |

Consol. Court No. 24-00001

Public Version
Confidential Information
Removed On Pages 6-8, 10,
and 21

## DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTIONS FOR JUDGMENT ON THE AGENCY RECORD

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

L. MISHA PREHEIM
Assistant Director

OF COUNSEL:                              KARA M. WESTERCAMP
DAVID RICHARDSON                         Trial Attorney
Attorney                                 Commercial Litigation Branch
Office of the Chief Counsel              U.S. Department of Justice
  for Trade Enforcement and Compliance   Civil Division
U.S. Department of Commerce              P.O. Box 480
Washington, D.C.                         Ben Franklin Station
                                         Washington, D.C. 20044
                                         Tel: (202) 305-7571
                                         Email: kara.m.westercamp@usdoj.gov

August 7, 2024                           *Attorneys for Defendant United States*

## <u>TABLE OF CONTENTS</u>

<div align="right"><u>PAGE</u></div>

STATEMENT PURSUANT TO RULE 56.2 ................................................................. 2

    I.     The Administrative Determination Under Review ............................... 2

    II.    Issues Presented For Review ............................................................ 3

STATEMENT OF FACTS ........................................................................................ 3

    I.    Initiation Of Investigation And Questionnaire Responses ..................... 3

        A.    Section A Questionnaire Responses ........................................... 4

        B.    Section C Questionnaire Responses ........................................... 5

    II.    Preliminary Results And Administrative Case Briefs .......................... 10

    III.    Final Results ............................................................................ 12

SUMMARY OF ARGUMENT ................................................................................ 14

ARGUMENT ...................................................................................................... 15

    I.    Standard Of Review ................................................................... 15

    II.    Substantial Evidence Supports Commerce's Decision That The Ecos/Grantec Floor Sofas At Issue Fall Within The Order's Exclusion For Multifunctional Furniture ................................................................................ 15

    III.    Substantial Evidence Supports Commerce's Decision That The Ecos/Grantec Mattress Toppers At Issue Fall Within The Order's Exclusion For Certain Mattress Toppers ...................................................................... 17

        A.    Substantial Evidence Supports Commerce's Exclusion Of The Toppers ................................................................................ 18

        B.    Brooklyn Bedding's Arguments Are Meritless ............................ 19

    IV.    The Court Should Grant Our Request For A Voluntary Remand Regarding Commerce's Use Of The Masterfoam And KEL Financial Statements ............... 22

CONCLUSION .................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

### <u>CASES</u>

*Ad Hoc Shrimp Trade Action Committee v. United States,*
  882 F. Supp. 2d 1377 (Ct. Int'l Trade 2013) .................................................................. 23

*Baroque Timber Indus. (Zhongshan) Co., Ltd. v. United States,*
  925 F. Supp. 2d 1332 (Ct. Int'l Trade 2013) ............................................................ 23, 24

*Changzhou Hawd Flooring Co., Ltd. v. United States,*
  6 F. Supp. 3d 1358 (Ct. Int'l Trade 2014) ...................................................................... 23

*Citizens Against the Pellissippi Parkway v. Mineta,*
  375 F.3d 412 (6th Cir. 2004) .......................................................................................... 24

*Consolo v. Fed. Mar. Comm'n,*
  383 U.S. 607 (1966) ........................................................................................................ 15

*Fujitsu Gen. Ltd. v. United States,*
  88 F.3d 1034 (Fed. Cir. 1996) ........................................................................................ 15

*Gleason Indus. Prod. Inc. v. United States,*
  31 CIT 393 (2007) ........................................................................................................... 23

*Nippon Steel Corp. v. United States,*
  345 F.3d 1379 (Fed. Cir. 2003) ...................................................................................... 24

*PAM, S.p.A. v. United States,*
  582 F.3d 1336 (Fed. Cir. 2009) ...................................................................................... 15

*SeAH Steel Corp. v. United States,*
  704 F. Supp. 2d 1353 (Ct. Int'l Trade 2010) .................................................................. 23

*SKF USA Inc. v. United States,*
  254 F.3d 1022 (Fed. Cir. 2001) .................................................................................. 22, 23

*Tianjin Wanhua Co., Ltd. v. United States,*
  253 F. Supp. 3d 1318 (Ct. Int'l Trade 2017) .................................................................. 24

*United States v. Eurodif S.A.,*
  555 U.S. 305 (2009) ........................................................................................................ 15

**STATUTES**

19 U.S.C. § 1516a(b)(1)(B) ................................................................ 15

19 U.S.C. § 1677b(a)(4) ...................................................................... 4

**REGULATIONS**

19 C.F.R. § 351.225(k)(1) ..................................................... 16, 18, 20

**ADMINISTRATIVE DETERMINATIONS**

*Mattresses from Cambodia, Indonesia, Malaysia, Servia, Thailand, Republic of Turkey, and the Socialist Republic of Vietnam:  Antidumping Duty Orders and Amended Final Affirmative Antidumping Determination for Cambodia*,
    86 Fed. Reg. 26,240 (Dep't of Commerce May 14, 2021) ...................................... 16

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
    87 Fed. Reg. 42,144, 42,147 (Dep't of Commerce July 14, 2022) ........................... 3

*Mattresses from Indonesia*,
    88 Fed. Reg. 37,027 (Dep't of Commerce June 6, 2023) ................................... 10

*Mattresses from Indonesia*,
    88 Fed. Reg. 85,240 (Dep't of Commerce Dec. 7, 2023) ................................ 3, 12

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| PT ECOS JAYA INDONESIA AND PT GRANTEC JAY INDONESIA,<br><br>Plaintiffs,<br><br>and<br><br>BROOKLYN BEDDING, LLC, FXI, INC., KOLCRAFT ENTERPRISES INC., LEGGETT & PLATT, INCORPORATED, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AND UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO,<br><br>Consolidated-Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>BROOKLYN BEDDING, LLC, FXI, INC., KOLCRAFT ENTERPRISES INC., LEGGETT & PLATT, INCORPORATED, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AND UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO,<br><br>Defendant-Intervenors. | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Consol. Court No. 24-00001<br><br>Public Version<br>Confidential Information<br>Removed On Pages 6-8, 10, and 21 |

**DEFENDANT'S RESPONSE TO PLAINTIFFS'**
**MOTIONS FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, defendant, the United States, respectfully submits this response in opposition to the motions for judgment upon the agency record filed by plaintiffs PT Ecos Jaya Indonesia and PT Grantec Jay Indonesia (collectively, Ecos/Grantec), ECF No. 22, and consolidated plaintiffs, Brooklyn Bedding, LLC, Corsicana Mattress Company, Elite Comfort Solutions, FXI, Inc., Kolcraft Enterprises Inc., Leggett& Platt, Incorporated, International Brotherhood of Teamsters, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service workers International Union, and AFL-CIO (collectively, Brooklyn Bedding), ECF No. 22.[1]

Plaintiffs challenge the final results of the first administrative review of the Department of Commerce's antidumping duty order covering mattresses from Indonesia.  As set forth below, we respectfully request a voluntary remand for Commerce to: (1) reconsider its determination to include "other income" from the surrogate financial statements of Masterfoam Industries Sdn. Bhd. (Masterfoam) in the cost of goods sold denominator of the constructed value profit and selling expense calculation, and (2) to include the financial statements of Kurlon Enterprise Limited (KEL) in the constructed value, selling expenses, and constructed export price (CEP) profit calculations.  We respectfully request that the Court sustain Commerce's final results in all other respects because they are supported by substantial evidence and in accordance with law.

## STATEMENT PURSUANT TO RULE 56.2

### I.     The Administrative Determination Under Review

The administrative determination under review is Commerce's first administrative review of the antidumping duty order covering mattresses from Indonesia.  *See Mattresses from*

---

[1]  This case was consolidated after the plaintiffs and consolidated-plaintiffs filed their motions for judgment on the agency record in their respective cases.  *See* Consolidation Order, ECF No. 25.

*Indonesia*, 88 Fed. Reg. 85,240 (Dep't of Commerce Dec. 7, 2023) (final results) (P.R. 240),[2] and the accompanying Issues and Decision Memorandum (IDM) (P.R. 232), and Ministerial Error Analysis Memorandum (Ministerial Error Memo) (P.R. 245).  The period of review is November 3, 2020, through March 30, 2022.

## II.    <u>Issues Presented For Review</u>

1.    Whether substantial evidence supports Commerce's determination that certain floor sofas fall within the order's scope exclusion for multifunctional furniture.

2.    Whether substantial evidence supports Commerce's determination that certain tri-fold mattress toppers fall within the order's scope exclusion for mattress toppers.

3.    Whether the Court should grant our request for a voluntary remand as to Commerce's determination to include "other income" from the surrogate financial statements of Masterfoam in the cost of goods sold denominator of the constructed value profit and selling expense calculation, and Commerce's determination to include the financial statements of KEL in the constructed value, selling expenses, and CEP profit calculations.

## <u>STATEMENT OF FACTS</u>

## I.    <u>Initiation Of Investigation And Questionnaire Responses</u>

On July 14, 2022, Commerce initiated the first administrative review of the antidumping duty order covering mattresses from Indonesia.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 42,144, 42,147 (Dep't of Commerce July 14, 2022) (P.R. 7).  The scope of the order included certain exclusions for multifunctional furniture and

---

[2]  Citations to public documents from the administrative record are identified as "P.R. ___," while citations to confidential record documents are identified as "C.R. ___."

mattress toppers.  Commerce selected PT Ecos Jaya Indonesia as a mandatory respondent.[3]

Respondent Selection Memo. at 4-5 (Aug. 5, 2022) (P.R. 16).  Commerce later collapsed PT

Ecos Jaya Indonesia with PT Grantec Indonesia and treated them as a single respondent,

"Ecos/Grantec."  Collapsing Memo. (Dec. 8, 2022) (P.R. 113).  Commerce issued the initial

questionnaire to Ecos/Grantec in August 2022.  Initial Questionnaire (P.R. 18).

### A.    Section A Questionnaire Responses

As part of the response to Section A of the initial questionnaire, Ecos/Grantec notified

Commerce that their home market and third country market markets were not viable because

sales in those markets constituted less than five percent by quantity of the U.S. sales of subject

merchandise.  Ecos/Grantec Section A Questionnaire Resp. at 2-3 (P.R. 40).  When neither the

home market nor the third country market is viable, Commerce calculates a normal value based

on constructed value.  19 U.S.C. § 1677b(a)(4).  Because these markets were not viable,

Ecos/Grantec's home market or third country market profit could not be used in the constructed

value profit calculation.  Commerce then requested that interested parties submit information for

determining surrogate profit and selling expense information.  Request for Constructed Value

Profit and Selling Expense Info at 1 (P.R. 54).

In response, on October 20, 2022, Ecos/Grantec submitted, in relevant part, the 2021

financial statement of Masterfoam, a Malaysian mattress producer.  Ecos/Grantec Constructed

Value Profit and Selling Expense Info. at 4-5 and Exhibit CV-5 (P.R. 73).  On the same day,

Brooklyn Bedding submitted, in relevant part, the 2021 financial statement of KEL, an Indian

---

[3]  Commerce also selected PT Zinus Global Indonesia and its affiliates Zinus Inc. and
Zinus, Inc., as a mandatory respondent, but no party challenges Commerce's determinations with
respect this mandatory respondent.  IDM at 1.

company, which manufactures mattresses.  Brooklyn Bedding Constructed Value Profit and

Selling Expense Info. at 7-8 and Exhibit 3 (P.R.  87).[4]

**B.** **Section C Questionnaire Responses**

On October 4, 2022, Ecos/Grantec timely responded to Commerce's Section C

Questionnaire in which Commerce requested Ecos/Grantec to report all U.S. sales of

merchandise which fall within the scope of the antidumping duty order covering mattresses from

Indonesia.  *See* Ecos/Grantec Section C Questionnaire Resp. at Part 1 (P.R. 60).  In that

questionnaire response, Ecos/Grantec reported its U.S. sales and indicated that it excluded

certain non-subject merchandise from its sales reporting, including " . . . *e.g.*, tri-folding

mattresses."  *Id*. at C-7.

In response, Brooklyn Bedding submitted new factual information (NFI) regarding

Ecos/Grantec's section C questionnaire response, including the final scope ruling from the

investigation concerning certain tri-fold mattresses and the Night & Day Furniture LLC request

to exclude certain tri-fold mattresses from the investigation.  *See* Brooklyn Bedding NFI, Section

C, Exhs. 1 and 2 (P.R. 70).  Ecos/Grantec timely rebutted and specifically identified the models

of toppers and floor sofas it had excluded from its reporting under the topper and multifunctional

furniture exceptions to the scope of the order.  Ecos/Grantec Rebuttal of Brooklyn Bedding's NFI

(P.R. 98) (Ecos/Grantec NFI Rebuttal).   Under the scope exclusion for mattress toppers,

Ecos/Grantec excluded the following from its U.S. sales reporting:

> 4-inch memory foam topper
> 4-inch tri-folding topper
> 4-inch tri-folding foam topper
> 4-inch tri-folding foam mattress

---

[4]  Although parties submitted other surrogate financial statements, Commerce only used the Masterfoam and KEL financial statements in the constructed value profit and selling expense calculations.  Ecos/Grantec only challenges the use of the KEL financial statement.

4-inch tri-folding foam topper cot.

*Id*. at 3. Under the scope exclusion for multifunctional furniture, Ecos/Grantec excluded 8-inch gel foam mattress and floor sofa from its U.S. sales reporting. *Id.* The full list of excluded products is below:

| Product Code | Height | Description | Exclusion* |
|---|---|---|---|
| [███] | ██ | ███████ ] | Reason 1 |
| ██ | ██ | ███████ ] | Reason 1 |
| ██ | ██ | ████████ ] | Reason 2 |
| ██ | ██ | ██████ ] | Reason 2 |
| ██ | ██ | █████ ] | Reason 2 |
| ██ | ██ | ██████ ] | Reason 2 |
| ██ | ██ | █████████ ] | Reason 2 |
| ██ | ██ | █████████ ] | Reason 2 |
| ██ | ██ | █████████ ] | Reason 2 |
| ██ | ██ | █████████ ] | Reason 2 |
| ██ | ██ | ██████ ] | Reason 2 |
| ██ | ██ | █████████ ] | Reason 2 |
| ██ | ██ | █████████ ] | Reason 2 |

\* Reason 1 = Multifunctional furniture exclusion; Reason 2 = Mattress topper exclusion

Ecos/Grantec Oct. 24, 2022, NFI Rebuttal at frame 10 (C.R. 134).

In section A of its September 15, 2022 questionnaire response, Ecos/Grantec had provided the product brochures for the floor sofa models and many of the mattress topper models which identify the sofas/mattresses as multifunctional furniture and the tri-folding mattresses as toppers. Section A Questionnaire Resp., Exhibit 18, Part 1, frames 214-221 (C.R. 38), and Part 2, frame 37 (C.R. 39). Ecos/Grantec explained that the several topper models that do not have specific product sheets are variations of the models that included: [████████████

████████████]. But for one of the topper models, [███████], the relevant brochure pages explicitly identified the models as mattress "Tri-Fold Topper." *Id.* For example, variation

[████] ] is identified as a "Tri-Fold Topper" in a brochure page.  *Id.* at Exhibit 18, Part 1, frame 217.

On December 7, 2022, Commerce issued a supplemental questionnaire in which it included questions concerning the above exclusions.  Supplemental Section C Questionnaire at Questions 8 and 9 (P.R. 112).  In relevant part:

> **Section C**
> Sales of Tri-Fold Product
> The scope of the mattresses order states, in part:
>
> > Also excluded is certain multifunctional furniture that is convertible from seating to sleeping, regardless of filler material or components, where that filler material or components are upholstered, integrated into the design and construction of, and inseparable from, the furniture framing, and the outermost layer of the multifunctional furniture converts into the sleeping surface. Such furniture may, and without limitation, be commonly referred to as "convertible sofas," "sofabeds," "sofa chaise sleepers," "futons," "ottoman sleepers" or a like description.
>
> > 8. Explain why you believe tri-fold products are non-subject merchandise.
>
> > 9. Explain whether you market and advertise your tri-fold products as mattresses or toppers. Provide sample documentation.

*Id.*

In its January 10, 2023, response, Ecos/Grantec explained that its floor sofas fell under the multifunctional furniture exclusion and that the tri-folding mattresses fell under the exclusion for 4 inch thick or less toppers.  Ecos/Grantec Supplemental Section C Questionnaire Resp. at S-5 to S-6 (P.R. 123) (Supplemental Section C Questionnaire Resp.).  Ecos/Grantec also provided the product specification sheets for all of the products at issue.  Supplemental Section C Questionnaire Resp. at Attachments SC-2 and SC-3, frames 79-90 (C.R. 144) and frames 1-2 (C.R. 145).  Although the brochure for model number [████] ] does not indicate that it is a

topper, the specification sheet does identify it as a topper. *Id*. at frame 85 (C.R. 144). Likewise, although the product specification sheet for [▉▉▉▉▉] does not indicate it is a topper, the brochure does identify it as a topper. Section A Resp. at Exhibit 18, Part 1, frame 217 (C.R. 38). Ecos/Grantec consistently identified the rest of the topper models as toppers in both the brochures and the product specification sheets. *Compare* Supplemental Section C Questionnaire Resp. at Attachments SC-2 and SC-3, frames 79-90 (C.R. 144) and frames 1-2 (C.R. 145) (Product Specification Sheets), *with* Section A Exhibit 18, Part 1, frames 214-221 (C.R. 38) and Part 2, frame 37 (C.R. 39) (Brochures).

In commenting on Ecos/Grantec's supplemental section C questionnaire response, Brooklyn Bedding argued that several models Ecos/Grantec had not reported were identified in the brochures as "4 inch Tri-Folding Memory Foam Mattress" and not toppers. Brooklyn Bedding Supplemental Section C Questionnaire Resp. Comments at 3 (P.R. 143). They argued that the order defines toppers as "a removable bedding accessory that supplements a mattress by providing an additional layer that is placed on top of a mattress. Excluded mattress toppers have a height of four inches or less." *Id*. Brooklyn Bedding also argued that the product brochures demonstrated that they were mattresses intended for sleeping upon and not toppers, and suggested that markings supported their argument that the models were mattresses. *Id*. at 4. Likewise, Brooklyn Bedding argued that the floor sofas were tri-fold mattresses not sold with or part of a framing structure so they would not qualify for the multifunctional furniture scope exception. *Id*. According to Brooklyn Bedding, the delivery method of "mattress in a box" also made them mattresses and not toppers. *Id*.

In response, Ecos/Grantec explained that the floor sofas meet the scope language for excluded multifunctional furniture and the toppers at issue meet the toppers exclusion.

Ecos/Grantec Resp. to Brooklyn Bedding Comments at 2-6 (P.R. 150). Ecos/Grantec also stated that the brochures clearly identified the models at issue as tri-fold toppers that are portable and can be used as a supplemental layer on top of a mattress. *Id*. at 5.

On May 4, 2023, Brooklyn Bedding submitted pre-preliminary results comments. Brooklyn Bedding argued that the floor sofas at issue did not meet the multifunctional furniture scope exception because they were mattresses and not integrated into the design and construction of, and inseparable from, any furniture framing. Brooklyn Bedding Pre-Prelim. Comments at 16-27 (P.R. 163). In other words, that the floor sofas meet the definition of a mattress in the scope. *Id*. at 18-19. Brooklyn Bedding further argued that Ecos mattresses identified as toppers were not "removable bedding accessories that supplements a mattress" but are marked and sold as a portable mattress that can be used in a variety of applications. *Id*. at 22-27.

Ecos/Grantec timely rebutted Brooklyn Bedding's claims. Ecos/Grantec explained that the floor sofas at issue met the exclusion exception because: 1) the record demonstrated the products are convertible from seating to sleeping, and 2) the product contains upholstered filler integrated in the design and construction of, and inseparable from, the furniture framing and does not contain separable forms. Ecos/Grantec Pre-Prelim. Rebuttal Comments at 15 (C.R. 341). Ecos/Grantec also argued that the record supported a finding that the mattress toppers at issue qualify for the topper exclusion and that even all the product codes at issue refer to them as "toppers." *Id.* at 16-18. They further argued that the fact that the materials are the same as mattress materials does not exclude the products from being toppers under the exception, because Brooklyn Bedding's argument that "portable" and "removable bedding accessory" are different is a distinction without a difference and not a valid basis to remove their toppers from the topper exclusion. *Id*.

9

## II.    **Preliminary Results And Administrative Case Briefs**

On June 6, 2023, Commerce published its preliminary results.  *Mattresses from Indonesia*, 88 Fed. Reg. 37,027 (Dep't of Commerce June 6, 2023) (preliminary results) (P.R. 188), and accompanying Preliminary Issues and Decision Memorandum (P.R. 174).  In the preliminary results, Commerce treated Ecos/Grantec's floor sofas and toppers at issue as excluded from the scope of the order.  For Ecos/Grantec's constructed value and CEP profit, Commerce used the simple averages of the profit data from the Masterfoam and KEL financial statements.  Ecos/Grantec Prelim. Cost Memo. at 2 (P.R. 177).

The parties submitted administrative case briefs.  Ecos/Grantec argued, in relevant part, that Commerce's test for evaluating surrogate financial statements for use in constructed value cases discourages the use of KEL's financial statement because KEL had significantly different business operations (in particular, its sales operations, including customer base), than Ecos/Grantec.  Ecos/Grantec Admin. Case Br. at 7-9 (P.R. 220).

Brooklyn Bedding continued to argue that the floor sofas and toppers at issue meet the order's definition of mattresses.  Brooklyn Bedding Admin. Case Br. at 21-23 (P.R. 223; C.R. 493).  To wit, they argued that the floor sofas at issue fail to meet the scope exclusion requirements for multifunctional furniture because they have "no furniture framing" and are simply mattresses.  *Id*. at 23-26.  They also argued that the toppers Ecos/Grantec claim are excluded meet the definition of mattresses, are identified as mattresses in the product codes and descriptions in the product brochures, and are referred to as mattresses on the ████████

██████ ].  *Id*. at 27-30.  In addition, Brooklyn Bedding argued that although Ecos/Grantec refers to some of the products as mattresses and toppers, the description does not say that they are removable bedding providing an additional layer that is placed on top of a mattress.  *Id*. at 30.

10

Because of these failures, Brooklyn Bedding argued that Commerce should use partial adverse facts available to fill in these gaps in Ecos/Grantec's reporting of U.S. sales.  *Id*. at 32-38.

In Ecos/Grantec's rebuttal administrative case brief, it argued that there was no basis for the application of adverse facts available because Ecos/Grantec had provided extensive responses concerning the excluded products and that Brooklyn Bedding's interpretation of the exclusion language was contrary to the plain language of the order.  *See* Ecos/Grantec Rebuttal Admin. Case Br. at 3-9 (C.R. 494).  Ecos/Grantec argued that it did not "fail to report" anything because Commerce did not require it to submit the sales data for these excluded products.  *Id*. at 5.

First, regarding the floor sofas, Ecos/Grantec argued that the floor sofas do not meet basic mattress criteria because they function as a mattress as well as a sofa.  *Id*. at 10.  Ecos/Grantec explained that the language of the scope exclusion for "multifunctional furniture," means that the floor sofa will meet the mattress criteria but will also be excluded as multifunctional furniture.  *Id*.  It also pointed out that the specification sheets for the floor sofas with drawings which demonstrate that the floor sofa is "one integrated product . . . and does not contain separable forms."  *Id*. at 11.

Second, as to its tri-folding mattress toppers, Ecos/Grantec argued that Brooklyn Bedding mischaracterize the mattress toppers at issue by claiming they are not a "removeable bedding accessory that supplements a mattress."  *Id*. at 12.  Ecos/Grantec argued that for all the relevant product codes, these products are identified in the brochure or product sheets or both as "mattress toppers," *i.e.*, not having the design or intended use as a standard mattress.  *Id*.  Further, Ecos/Grantec urged Commerce to reject Brooklyn Bedding's contentions that "any product sharing the same raw materials as a mattress has to be considered a mattress" because that

ignores the purpose and language of the scope. *Id.* For example, Ecos Grantec contested Brooklyn Bedding's argument that the "portable" nature of Ecos/Grantec's mattress toppers is not equivalent to "removable" within the meaning of the topper exclusion because the marketing of the items as toppers means that they are inherently removable. *Id*. at 12-13. Finally, Ecos/Grantec argued that these intentional misinterpretations of the order are merely an attempt to improperly enlarge the order's scope. *Id.* at 13-14.

## III.  <u>Final Results</u>

On December 7, 2023, Commerce published the final results of the review. *Final Results*, 88 Fed. Reg. 85,240; IDM at 1. Commerce continued to find that the floor sofas and tri-folding mattress toppers at issue fell within the scope exclusion language. IDM at 24-26.

Regarding the floor sofas, Commerce noted that Brooklyn Bedding agreed that the floor sofas met two of the three criteria to be multifunctional furniture, that they "are convertible from seating to sleeping and the outermost layer converts into the sleeping surface." *Id.* at 24. Commerce explained that although Brooklyn Bedding disputed Commerce's finding that the floor sofas were "integrated into the design and construction of, and inseparable from, the furniture framing." *Id.* Commerce determined that the product brochure provided evidence that the floor sofas at issue were "one integrated unit consisting of foam and a cover" and the "unit serves as both a mattress and a frame; there are no pieces of these products that separate from one another." *Id*. at 24-25. Commerce found that Brooklyn Bedding's reliance on the underlying investigation's Seat-to-Sleep furniture system scope was inappropriate because under the Seat-to-Sleep facts there was no evidence of the mattress portion being inseparable from the furniture framing unlike this review. *Id*. at 25. Commerce also found that the fact that the floor sofas have

the same core and ticking as mattresses does not remove a multifunction product from the multifunction furniture exclusion because they can be used as mattresses. *Id.*

Regarding mattress toppers, Commerce found that the brochures and/or specification sheets and each product code, referred to the mattress toppers at issue as toppers. *Id.* The product brochures referred to the toppers as portable and comfortable mattresses. *Id.* Therefore, Commerce found that the fact that these products may be used as mattresses is "irrelevant" to the topper exclusion. *Id.* Commerce also found that the use of descriptive word "toppers" means that they are "portable and removable." *Id.* For example, Commerce explained that the "product brochure also states that these toppers can be folded for storage in a closet when not in use," which is indicative of a topper because the mattress brochures do not have such a product description. *Id.* Likewise, Commerce rejected Brooklyn Bedding's argument that it was significant that Ecos/Grantec used the same raw materials for mattresses and mattress toppers, because Commerce determined that "the fact that the products contain a core and upholstery (and/or ticking) is irrelevant if the products also fall within one of the scope exclusions." *Id.* at 26.

Further, because Commerce did not require Ecos/Grantec to report these products as in-scope items, it declined to address Brooklyn Bedding's argument that it should apply facts otherwise available. *Id.*

To calculate the financial ratios, Commerce continued to use the simple average of the Masterfoam and KEL financial statements. *Id.* at 11-18. As part of the constructed value profit calculation, Commerce excluded Masterfoam's "other income" from the numerator of the profit and selling expense ratio calculation. Ecos/Grantec Final Calc. Memo. at 2 (P.R. 234). However, Commerce did not remove "other income" from the cost of goods sold denominator

used to calculate the profit and selling expense ratios.  Ecos/Grantec Final Surrogate Profit and Selling Expense Ratios Calc., Excel Spreadsheet (P.R. 235).

Ecos/Grantec timely filed a ministerial error allegation identifying Commerce's failure to exclude the Masterfoam "other income" from the cost of goods sold denominator as a clerical error.  Ministerial Error Allegation (P.R. 242).  Commerce, however, found that it was not a clerical error, but a methodological issue and declined to make the requested adjustment. Commerce Ministerial Error Memo (P.R. 246).

<u>**SUMMARY OF ARGUMENT**</u>

Commerce's final determination is supported by substantial evidence and in accordance with law.  First, substantial evidence supports Commerce's decision that certain floor sofas met the order's definition for the multifunctional furniture exclusion.  Commerce found that the product brochures showed that the unit itself serves as both mattress and frame and there is no need for separate furniture framing.

Second, substantial evidence supports Commerce's decision that Ecos/Grantec's tri-folding mattresses, or toppers, met the definition of the topper exclusion because the toppers all have a height of four inches or less.  As Commerce reasonably found, the fact that a topper *may* be used as a mattress does not remove it from the coverage of the exclusion.

Finally, we respectfully request that the Court remand to Commerce its determinations with respect to the Masterfoam and KEL financial statements.  For example, Commerce needs to assess whether the KEL financial statements should be used because Ecos/Grantec argues that KEL has significantly different business operations than Ecos/Grantec.  Likewise, Commerce needs to consider whether it should adjust the "other income" reflected in the Masterfoam financial statements and which was excluded from the numerator of the constructed value profit

expense rate calculation and should likewise have been excluded from the cost of goods sold

denominators of the constructed value profit and constructed value selling expense rate

calculations.

## ARGUMENT

### I.    Standard Of Review

In reviewing Commerce's antidumping duty determinations, "the Court of International

Trade must sustain 'any determination, finding or conclusion found' by Commerce unless it is

'unsupported by substantial evidence on the record, or otherwise not in accordance with the

law.'" *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting

19 U.S.C. § 1516a(b)(1)(B)).  "The specific factual findings on which {Commerce} relies in

applying its interpretation are conclusive unless unsupported by substantial evidence." *United*

*States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009).  Substantial evidence means "more than a

mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009).

Further, even if the Court may draw two inconsistent conclusions from the record evidence, that

possibility "does not prevent an administrative agency's finding from being supported by

substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

### II.    Substantial Evidence Supports Commerce's Decision That The Ecos/Grantec Floor Sofas At Issue Fall Within The Order's Exclusion For Multifunctional Furniture

In the final results, Commerce determined that the Ecos/Grantec floor sofas in question,

which converted from a mattress to a floor sofa, fell within the order's exclusion for

multifunctional furniture.  *See* IDM at 24-25.  As a result, Commerce did not require

Ecos/Grantec to report the U.S. sales of these floor sofas for use in the dumping calculations.  *Id*.

at 26.  Brooklyn Bedding argues that the floor sofas did not meet the multifunctional furniture

exclusion because the floor sofas do not have any furniture framing.  Brooklyn Bedding Br. at

22-25.  As we demonstrate below, this argument is meritless.

When determining whether a product falls within the scope of an order, Commerce

begins with the "language of the scope . . . including the descriptions of merchandise expressly

excluded."  19 C.F.R. § 351.225(k)(1).  Commerce may make a scope determination based on the

scope language alone if the scope language is dispositive.  *Id*.  The multifunction furniture

exclusion has three criteria: (1) "multifunctional furniture that is convertible from seating to

sleeping, regardless of filler material or components," (2) "where that filler material or

components are upholstered, integrated into the design and construction of, and inseparable

from, the furniture framing," and (3) "the outermost layer of the multifunctional furniture

converts into the sleeping surface."  IDM at 4; *see also Mattresses from Cambodia, Indonesia,*

*Malaysia, Servia, Thailand, Republic of Turkey, and the Socialist Republic of Vietnam:*

*Antidumping Duty Orders and Amended Final Affirmative Antidumping Determination for*

*Cambodia*, 86 Fed. Reg. 26,240 (Dep't of Commerce May 14, 2021) (Order).  Such

multifunctional furniture may commonly be referred to as "convertible sofas," "sofabeds," "sofa

chaise sleepers," "futons," "ottoman sleepers," and the like.  IDM at 4.

Brooklyn Bedding solely challenges the fact that Ecos/Grantecs floor sofas do not have

any furniture framing.  Brooklyn Bedding Br. at 22-25.  As we explain below, Commerce relied

upon substantial record evidence to find that the floor sofas were excluded from the order.

As Commerce found, the product brochure for the floor sofas describes them as one

integrated unit consisting of foam and a cover.  IDM at 25.  The brochure describes that the

product "{e}asily folds from a mattress to a sofa or extra seat cushion . . ."   Section A

Questionnaire Resp., Exhibit 18, frames 21-22 (P.R. 40).  The brochure pictures show the integrated unit and how it folds.  *Id.*  Based on this substantial record evidence, Commerce found that the unit of the foam and cover serves as *both* a mattress and the frame because they are non-separable into separate parts.  IDM at 24-25.

Brooklyn Bedding argues that there is no furniture frame separate from the foam and covers.  Brooklyn Bedding Br. at 22-25.  This argument ignores Commerce's factual finding that the foam shapes are integrally connected by the cover and are the frame that holds the product in its floor sofa form, floor chaise form, or mattress form.  IDM at 24-25.  Indeed, the picture on page 24 of Brooklyn Bedding's brief showing furniture made of cushions held together by different framing material (wood) and legs (metal) does not undermine Commerce's finding.  *See* Brooklyn Bedding Br. at 24.   The order, however, does not require that the furniture frame be wood and/or metal separate from the foam and covers in order to meet the multifunctional furniture exclusion.  IDM at 4.

Because substantial evidence supports Commerce's decision that the foam and cover provide the framing for the mattress and the floor sofa/chaise, Commerce's determination that Ecos/Grantec's multifunctional floor sofas are outside the scope of the order, and did not need to be reported, should be sustained.  *See id.* at 24-25.

III.    **Substantial Evidence Supports Commerce's Decision That The Ecos/Grantec Mattress Toppers At Issue Fall Within The Order's Exclusion For Certain Mattress Toppers**

In the final results, Commerce determined that certain Ecos/Grantec mattress toppers met the order's exclusion for mattress toppers.  *See* IDM at 24-25.  As a result, Commerce did not require Ecos/Grantec to report the U.S. sales of these mattress toppers for use in the dumping calculations.  *Id*. at 26.  As we demonstrate below, substantial evidence supports Commerce's

determination that the Ecos/Grantec mattress toppers at issue fit squarely within the scope exclusion language. *See id.* at 4, 25-26.

A.    **Substantial Evidence Supports Commerce's Exclusion Of The Toppers**

The scope language concerning the exclusion of mattress toppers from the scope of the antidumping duty order covering mattresses from Indonesia:

> Additionally, also excluded from the scope of this *Order* are "mattress toppers." A "mattress topper" is a removable bedding accessory that supplements a mattress by providing an additional layer that is placed on top of a mattress. Excluded mattress toppers have a height of four inches or less.

IDM at 4; *see* 19 C.F.R. § 351.225(k)(1).

Ecos/Grantec's mattress toppers meet the language of the "mattress topper" exclusion. First, the Ecos/Grantec's mattress toppers at issue are "a removable bedding accessory that supplements a mattress by providing an additional layer." IDM at 4. Each of the brochures that Ecos/Grantec provided indicate the mattress toppers are portable and can be used, for example, on college dorm room beds and "stored in a closet or under the bed when not in use." Section A Questionnaire Resp., Part 2, frames 15-20 (P.R. 40). Relying on this record evidence, Commerce found that the tri-fold toppers at issue were toppers because regular mattresses would not be stored in a closet or under the bed "when not in use," which is a "description not found in the product brochure for mattresses." IDM at 25. Plainly put, the toppers are clearly "removable" if they can be stored in a closet or under a bed. *Id.*

Commerce also found that the brochures and/or the product specifications sheets described the mattress toppers as "toppers," not mattresses. *Id.*; *see also* Supplemental Section C Questionnaire Resp. at Attachments SC-2 and SC-3, frames 80-90 (C.R. 144) and frames 1-2 (C.R. 145) (Product Specification Sheets); Section A Questionnaire Reps. At Exhibit 18, Part 1,

frames 214-221 (C.R. 38) and frames 15-20 and 69 (P.R. 40) (Brochures).  Commerce further found that the fact that these toppers *may* be used as mattresses is irrelevant because they meet the criteria of the topper exclusion.  IDM at 25.  In other words, there is no *caveat* to the topper scope exception stating that toppers that *can* be used as mattresses fall within the scope of the order.  *See id.*

Finally, Commerce found that all the toppers at issue meet the topper exclusion thickness of 4 inches or less.  *Id.*; *see also* Ecos/Grantec Supplemental Questionnaire Resp. at Exhibit SC-3 (C.R. 144).

 Because substantial evidence supports Commerce's decision that the tri-fold toppers at issue are all 4 inches or less in thickness and are removable bedding which may be stored in a closet or under a bed, and provide an additional layer of memory foam to be place that can be placed on a mattress, this court should sustain Commerce's decision that the mattress toppers at issue meet the specific scope exclusion language.  IDM at 25.  As we explain below, plaintiffs' arguments to the contrary are not supported by the administrative record.

**B.**  **Brooklyn Bedding's Arguments Are Meritless**

Brooklyn Bedding's various arguments as to why these mattress toppers allegedly did not meet the mattress topper exclusion from the order's scope, Brooklyn Bedding Br. at 10-21, are meritless, as we explain below.

First, Brooklyn Bedding argues that because Commerce determined that a tri-fold mattress topper was a mattress in a scope decision during the investigation, it should again do so here.  *Id.* at 10-12.  However, as Brooklyn Bedding concedes, the mattress that was the subject of that scope decision was 6 inches thick.  *Id.* at 11 ("The only difference between Ecos/Grantec's tri-folding mattress and the tri-folding mattress analyzed in the underlying investigation is the

height . . . a height of 6 inches . . .").  The unambiguous language of the order provides that the topper scope exclusion is limited to toppers with 4 inches or less thickness; by its terms, 6-inch toppers do not meet the exclusion requirement.  IDM at 4.  Therefore, this scope decision is readily distinguishable from Ecos/Grantec's toppers, which are 4 inches or less.  *See id.* at 25. Without support, Brooklyn Bedding argues that "a height of 4 inches or less is a necessary, but insufficient, condition for satisfying the mattress topper exclusion" because "mattresses can also be 4 inches."  Brooklyn Bedding Br. at 11.  Although this may be true, if those "mattresses" otherwise meet the height criteria and the other criteria to be a topper, they are excluded from the order.  IDM at 4; *see* 19 C.F.R. § 225(k)(1).

Second, citing product descriptions, Brooklyn Bedding argues that the Ecos/Grantec's tri-folding mattresses are designed and marketed to be mattresses.  Brooklyn Bedding Br. at 12-14. Commerce acknowledged that these toppers can, as a practical matter, be used as mattresses but the fact that they have *dual* use as mattress toppers and mattresses does not take them out of the topper exclusion.  IDM at 4.  Indeed, Commerce found that Ecos/Grantec's marketing of the products as dual use does *not* undermine the conclusion, based on the scope language, that the products meet the definition of an excluded mattress topper.  *Id.* at 25.

Relatedly, Brooklyn Bedding argue that Ecos/Grantec market their actual toppers using different codes and descriptions.  Brooklyn Bedding Br. at 14-15.  This argument is anchored on a different type of topper, a single sheet (not tri-fold), 2.5 inch topper, which from the sales literature only functions as a supplement to a mattress providing an extra layer of support.  *Id.* at 14-16.  However, as we explained above, the scope exclusion language does not limit the topper exclusion to single sheet toppers:  excluded mattress toppers must only have a height of four

inches or less.  IDM at 4, 25.  The scope exclusion language does not differentiate between

single sheet and tri-fold toppers.  *Id.* at 4.

Third, Brooklyn Bedding argues that Ecos/Grantec's inconsistent labelling of the

products as both mattresses and toppers meant that Commerce could not find them to be toppers.

Brooklyn Bedding Br. at 16-17.  As an initial matter and as we explained above, Ecos/Grantec

labeled two toppers differently in the brochure and product sheet.  Those two models are

identified as toppers in either their brochure or their product specification sheet.  Although the

brochure for [          ] does not expressly indicate that it is a topper, the specification sheet

does expressly identify it as a topper.  Supplemental Questionnaire Resp. C, at Attachment SC-3,

frames 85 (C.R. 144).  And although the product specification sheet for [          ] does not

expressly indicate it is a topper, the brochure does expressly identify it as a topper.  Section A

Questionnaire Resp., Exhibit 18, Part 1, frame 217 (C.R. 38).  In other words, all the tri-fold

mattress toppers are identified as mattress toppers in both the brochures and product sheet except

for two products; those two are also identified as mattress toppers in one of the two documents.

But again, this marketing is not the only measure by which Commerce determined they were

toppers, because Commerce analyzed the language of the scope defining mattress toppers and

determined that they met the mattress topper definition in the order.  IDM at 25.

Fourth, Brooklyn Bedding argues that the product codes and commercial invoices

identify these products labeled mattress toppers as mattresses.  Brooklyn Bedding Br. at 18.

Again, the fact that these tri-fold mattress toppers may have dual use as a mattress and a topper

does not remove them from the topper exclusion.  IDM at 4, 25.

Fifth, Brooklyn Bedding argues that these tri-fold mattresses are not made to traditional

mattress sizes, thus demonstrating they are not toppers.  Brooklyn Bedding Br. at 19-21.  But,

again, Commerce determines whether a product is outside of the scope of the order by considering the order's language; the definition of excluded mattress toppers contains no requirement that the product must be the same size as a mattress. IDM at 4. Indeed, Brooklyn Bedding were responsible for the scope language when the petition was filed and cannot now, in an administrative review, amend the scope to be more inclusive than the scope language set in the final investigation determination. *Id.*

Thus, as demonstrated above, Ecos/Grantec's mattress toppers meet the definition of mattress topper in the scope exclusion language and the Court should reject Brooklyn Bedding's various arguments to the contrary.

## IV.    The Court Should Grant Our Request For A Voluntary Remand Regarding Commerce's Use Of The Masterfoam And KEL Financial Statements

Ecos/Grantec challenges Commerce's decision to calculate constructed value profit and selling expenses and CEP profit using KEL's financial statements, arguing that that data is dissimilar to Ecos/Grantec's customer bases. Ecos/Grantec Br. at 8-14. Ecos/Grantec also challenges Commerce's decision to reject its ministerial error allegation relating to the "other income" in the Masterfoam financial statements. *Id.* at 15-17. We respectfully request that the Court grant our request for a voluntary remand to address these two issues.

An agency may ask the Court to remand a matter, without confessing error, so that an agency may reconsider its prior position. *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001). In *SKF USA*, the court outlined three separate scenarios in which an agency may seek a remand: (1) to reconsider its decision because of intervening events outside of the agency's control; (2) to reconsider its previous position (absent any intervening events) without confessing error; and (3) to change the result because the agency believes the original decision was incorrect on the merits. *Id.* at 1028.

22

A voluntary remand is "generally appropriate 'if the agency's concern is substantial and legitimate.'" *SeAH Steel Corp. v. United States*, 704 F. Supp. 2d 1353, 1378 (Ct. Int'l Trade 2010) (quoting *SKF USA*, 254 F.3d at 1029); *see also Ad Hoc Shrimp Trade Action Committee v. United States*, 882 F. Supp. 2d 1377, 1381 (Ct. Int'l Trade 2013). "A concern is substantial and legitimate when (1) Commerce has a compelling justification, (2) the need for finality does not outweigh that justification, and (3) the scope of the request is appropriate." *Changzhou Hawd Flooring Co., Ltd. v. United States,* 6 F. Supp. 3d 1358, 1360 (Ct. Int'l Trade 2014) (citing *Baroque Timber Indus. (Zhongshan) Co., Ltd. v. United States,* 925 F. Supp. 2d 1332, 1338-39 (Ct. Int'l Trade 2013)). Further, as this Court has explained, when an agency seeks a voluntary remand "to correct a mistake or address some other substantial and legitimate concern, it is far more sensible for a court to defer to the agency whose expertise, after all, consists of administering the statute." *Gleason Indus. Prod. Inc. v. United States*, 31 CIT 393, 396 (2007).

Here, the Court should grant our requested remand because Ecos/Grantec have raised arguments in their brief to this Court that give Commerce a substantial and legitimate concern to reconsider its position in the final results.

Concerning Commerce's use of the KEL financial statements, we seek a voluntary remand for Commerce to address Ecos/Grantec's arguments that KEL has significantly different business operations than Ecos/Grantec. Ecos/Grantec Br. at 11-14. Specifically, Ecos/Grantec allege that KEL has a different customer base, thus, making the use of its financial statements for constructed value profit, selling expenses, and a CEP adjustment inappropriate, which Commerce did not address in the final results. *Id.* Concerning Commerce's adjustment to the final constructed value profit and selling expense rate calculations, Commerce, upon review of Ecos/Grantec's brief, agrees that the "other income" reflected in the Masterfoam financial

23

statements—which was excluded from the numerator of the constructed value profit expense rate calculation—should likewise have been excluded from the cost of goods sold denominators of the constructed value profit and constructed value selling expense rate calculations, which ensures that the numerators and denominators are on a consistent basis. *Id.* at 15-16.

Granting our motion is particularly appropriate because a remand may allow Commerce to "cure the very legal defects asserted by plaintiffs challenging federal action." *Citizens Against the Pellissippi Parkway v. Mineta*, 375 F.3d 412, 416 (6th Cir. 2004) (finding district court abused its discretion by not granting motion for voluntary remand for agency to address error alleged by plaintiff); *see also Baroque Timber*, 925 F. Supp. 2d at 1339 ("Clarifying and correcting a potentially inaccurate determination is a compelling justification {for voluntary remand}."). By requesting a voluntary remand, we do not waive any defenses regarding the decision at issue nor any arguments related to the merits of the issues before the Court. *See, e.g.*, *Tianjin Wanhua Co., Ltd. v. United States*, 253 F. Supp. 3d 1318, 1327-28 (Ct. Int'l Trade 2017) (finding that by requesting a voluntary remand on the entire issue of surrogate country selection and addressing all of respondent's arguments on remand, Commerce did not waive specific arguments about the quality of Indonesian financial ratio data, which were related to the surrogate country selection issue); *Nippon Steel Corp. v. United States*, 345 F.3d 1379, 1381-82 (Fed. Cir. 2003) (holding that the Court "should have remanded once again for further proceedings rather than instructing entry by the {International Trade} Commission of a negative injury").

## **CONCLUSION**

For these reasons, we respectfully request that the Court grant our request for voluntary remand for Commerce to reconsider the Masterfoam and KEL financial statements issues, deny plaintiffs' motions in all other respects, and sustain Commerce's final results.

<div style="margin-left:50%">

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/Tara K. Hogan for L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

/s/ Kara M. Westercamp
KARA M. WESTERCAMP
Trial Attorney
Commercial Litigation Branch
U.S. Department of Justice
Civil Division
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-7571
Email: kara.m.westercamp@usdoj.gov

</div>

OF COUNSEL:
DAVID RICHARDSON
Attorney
Office of the Chief Counsel
  for Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

August 7, 2024                    *Attorneys for Defendant United States*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that the public version of defendant's "Defendant's Response in Opposition to Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record" in this matter complies with the Court's type-volume limitation rules.  According to the word-count calculated by the word processing system with which the brief was prepared, this brief contains a total of 6,718 words.

<u>/s/ Kara M. Westercamp</u>

# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| PT ECOS JAYA INDONESIA AND PT GRANTEC JAY INDONESIA,<br><br>Plaintiffs,<br><br>and<br><br>BROOKLYN BEDDING, LLC, FXI, INC., KOLCRAFT ENTERPRISES INC., LEGGETT & PLATT, INCORPORATED, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AND UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO,<br><br>Consolidated-Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>BROOKLYN BEDDING, LLC, FXI, INC., KOLCRAFT ENTERPRISES INC., LEGGETT & PLATT, INCORPORATED, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AND UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO,<br><br>Defendant-Intervenors. | Consol. Court No. 24-00001<br><br>Business Proprietary Version |

## <u>ORDER</u>

Upon consideration of plaintiffs' motion for judgment upon the agency record,

defendant's response, and all other pertinent papers, it is hereby

ORDERED that defendant's request for a voluntary remand is granted; and it is further

ORDERED that plaintiffs' motion is otherwise denied.


Dated: _____          _____
         New York, New York                                 Judge