# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

|  |  |
|---|---|
| PT ECOS JAYA INDONESIA AND PT GRANTEC JAYA INDONESIA, | )<br>)<br>) |
| *Plaintiffs and Consolidated Defendant-Intervenors*, | ) Consolidated Court. No. 24-00001<br>)<br>) **NONCONFIDENTIAL**<br>) **VERSION**<br>) |
| v. | ) Business Proprietary Information<br>) Removed from Brackets on Page 8. |
| UNITED STATES, | )<br>) |
| *Defendant*, | )<br>) |
| and | )<br>) |
| BROOKLYN BEDDING, LLC ET AL., | )<br>) |
| *Defendant-Intervenors and Consolidated Plaintiffs* | )<br>)<br>) |

## MATTRESS PETITIONERS' REPLY BRIEF

                        Yohai Baisburd
                        Chase J. Dunn
                        Nicole Brunda
                        CASSIDY LEVY KENT (USA) LLP
                        2112 Pennsylvania Ave. NW
                        Suite 300
                        Washington, D.C. 20037
                        (202) 567-2300

                        *Counsel to Brooklyn Bedding et al.*

Date:   September 25, 2024

**Table of Contents**

                                                                             **Page**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ....................................................................................................................... 1

    A. Ecos/Grantec's Foldable Foam Mattress is Not "Multifunctional Furniture" ................. 1

    B. Ecos/Grantec's Tri-Folding Mattresses Are Advertised, Marketed, and Function as Mattresses, Not Toppers ................................................................................................ 4

        1. Defendant's Assertion that Ecos/Grantec's Tri-Folding Mattresses Have Dual Use as Mattresses and Toppers is Without Record Support ........................................................................................................ 5

        2. Ecos/Grantec's Inconsistent Product Labeling Does Not Support Finding Tri-Folding Mattresses Function as Toppers ............................................ 7

        3. The Department's Prior Scope Determination that Tri-Folding Mattresses are Subject Merchandise Applies to Ecos/Grantec's Tri-Folding Mattresses ...................................................................................... 9

        4. Ecos/Grantec's Tri-Folding Mattresses are Mattresses ......................................... 9

III. CONCLUSION .................................................................................................................. 10

## **Table of Authorities**

Page(s)

Court Decisions

*Duferco Steel Inc. v. United States*, 296 F.3d 1087 (Fed. Cir. 2002) ...............................................3

*ArcelorMittal Stainless Belgium N.V. v. United States*, 694 F.3d 82 (Fed. Cir. 2012)................4, 7

Administrative Determinations

*Mattresses From Indonesia: Final Results of Antidumping Duty Administrative Review; 2020-2022*, 88 Fed. Reg. 85240 (Dec. 7, 2023)........................................................ *passim*

## I. INTRODUCTION

Pursuant to Rule 56.2 of the Rules of the US Court of International Trade, Plaintiffs Brooklyn Bedding, LLC, Corsicana Mattress Company, FXI, Inc., Kolcraft Enterprises Inc., Leggett & Platt, Incorporated, International Brotherhood of Teamsters, United Steel Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, (hereinafter, "Plaintiffs" or "Mattress Petitioners") respectfully submit this reply to the response brief filed by Defendant, the United States, on August 7, 2024. *See* "Defendant's Response to Plaintiffs' Motions for Judgment on the Agency Record" (Aug. 7, 2024) ("Defendant's Br."); *see also* "Response of PT Ecos Jaya Indonesia and PT Grantec Jaya Indonesia To the Memorandum of Points of Law and Fact in Support of Consolidated Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record" (Aug. 28, 2024) (incorporating by reference the arguments of Defendant); *Mattresses from Indonesia: Final results of Antidumping Duty Administrative Review; 2020-2022*, 88 Fed. Reg. 85240 (Dec. 7, 2023) ("*Final Results*") (P.R. 241) and accompanying Issues and Decision Memorandum ("IDM") (P.R. 233).

As discussed below, Defendant's arguments that Ecos/Grantec's foldable mattresses satisfy certain scope exclusions are not supported by substantial evidence. Accordingly, Mattress Petitioners respectfully request that Court remand this matter to the Department with instruction to find Ecos/Grantec's foldable foam mattresses are subject merchandise.

## II. ARGUMENT

### A. Ecos/Grantec's Foldable Foam Mattress is Not "Multifunctional Furniture"

The multifunctional furniture exclusion unambiguously applies to *furniture*, not in-scope foldable mattresses that have no furniture framing. Although Defendant agrees that Ecos/Grantec's foldable foam mattress floor sofas are mattresses as defined in the scope, Defendant asserts that such products satisfy the multifunctional furniture exclusion because (1)

the mattress itself can serve as mattress and frame, and (2) the exclusion does not require the frame to be made of any particular material. *See* Defendant's Br. at 16-17. Defendant's interpretation of the multifunctional furniture exclusion ignores the plain language of the scope, erases critical requirements of the exclusion, and is not supported by substantial evidence.

*First*, the *Order* covers "all types" of mattresses, including foldable mattresses. IDM at 4; Letter from Mattress Petitioners, "Mattress Petitioners' Rebuttal Factual Information Submitted In Response to Ecos/Grantec's Section C Questionnaire Response" (Oct. 17, 2022) ("CQR RFI") (P.R. 71) at Exhibit 1 (Final Scope Memorandum) at Comment 2. Specifically, in the underlying investigation, the Department evaluated whether tri-folding mattresses—which are three equally sized foam pieces encased in pockets of a three-pocket cover—were within the scope of the *Order*. *See* CQR RFI at Exhibit 1 (Final Scope Memorandum) at Comment 2. The Department found that, although the foam pieces were encased in different pockets and could be folded when not in use, tri-folding mattresses met the definition of a mattress as defined in the *Order* and were therefore subject merchandise. *Id.* The only difference between the tri-folding mattresses the Department found to be in-scope during the underlying investigation and Ecos/Grantec's foldable foam mattress floor sofas is the ways in which the foam cores may be folded. *Id.* The mere fact that a mattress can be folded in various ways, however, does not remove it from the scope of the *Order* and does not render the foldable mattress "multifunctional furniture." *Id.*

*Second*, the Department's assertion that a mattress can serve as both a mattress and a furniture frame ignores the plain language of the multifunctional furniture exclusion, which requires that the mattress component of the multifunctional furniture be "***integrated into the design and construction of, and inseparable from, the furniture framing***." IDM at 4. The exclusion unambiguously differentiates between the mattress component (*i.e.,* the "filler material

2

or components") from the "furniture framing." *Id.* The Department's interpretation of the exclusion, however, erases the distinction between the mattress and the furniture framing, which renders the exclusion meaningless. Specifically, under the Department's interpretation the multifunctional furniture exclusion would exclude a mattress that is "upholstered, integrated into the design and construction of, and inseparable from, {the mattress}." *Id.* In other words, the Department has not simply erroneously interpreted the multifunctional furniture exclusion but has unlawfully rewritten it to cover merchandise that is squarely within the scope of the orders (*i.e.,* foldable mattresses). *Cf. Duferco Steel Inc. v. United States*, 296 F.3d 1087, 1095 (Fed. Cir. 2002) ("Commerce cannot 'interpret' an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms.").

*Third,* Defendant's argument that the multifunctional furniture exclusion "does not require that the furniture frame be wood and/or metal separate from the foam and covers" misses the point. Defendant's Br. at 17. Although multifunctional furniture may utilize furniture framing produced from various materials (*e.g.,* wood, plastic, metal, etc.), the multifunctional ***furniture*** exclusion requires the product to have "***furniture framing***." IDM at 4 (emphasis supplied). A mattress cover is not a piece of furniture framing; rather, it is a necessary component making up a finished mattress. *See* IDM at 4 (defining a mattress as an assembly of material that includes a core and a cover). Indeed, the last sentence of the exclusion provides context for the type of multifunctional furniture that is excluded (*i.e.*, convertible sofas, sofa beds, sofa chaise sleepers, futons, and ottoman sleepers). *Id.* Read as a whole, and in conjunction with the Department's scope analysis from the underlying investigation, the multifunctional furniture exclusion does not apply to foldable mattresses that are otherwise not integrated into and inseparable from any furniture framing.

3

In summary, the Department's interpretation of the multifunctional furniture exclusion ignores the plain language of the exclusion and eliminates a critical requirement of that exclusion (*i.e.,* that the mattress be integrated into furniture framing). Under the Department's interpretation, all mattresses that have the capacity to be folded could satisfy the multifunctional furniture exclusion because all mattresses have a cover. Such a result is not only inconsistent with Mattress Petitioners' intent in crafting the scope of the *Order* but is also inconsistent with the Department's own scope analysis from the underlying investigation. Accordingly, the Department's determination that Ecos/Grantec's foldable foam mattress "floor sofas" satisfied the multifunctional furniture exclusion is unsupported by substantial evidence.

### B. Ecos/Grantec's Tri-Folding Mattresses Are Advertised, Marketed, and Function as Mattresses, Not Toppers

The defining characteristic of a mattress topper—its function—is that it "supplements a mattress by providing an ***additional*** layer that is placed on top of a mattress." IDM at 4 (emphasis supplied). Tri-folding mattresses are mattresses; they are not toppers insofar as they do not function as a supplement to a mattress. The Court of Appeals for the Federal Circuit explains that "antidumping orders should not be interpreted in a vacuum devoid of any consideration of the way the language of the order is used in the relevant industry." *ArcelorMittal Stainless Belgium N.V. v. United States*, 694 F.3d 82, 88 (Fed. Cir. 2012). But that is precisely what the Department and Defendant have done in asserting that tri-folding mattresses, which are not produced to standard mattress sizes and are not marketed or advertised as a supplement to a mattress, are in fact toppers. Accordingly, this Court should remand this matter to the Department with instruction to find that Ecos/Grantec's tri-folding mattresses are subject merchandise and do not satisfy the mattress topper exclusion.

4

### 1. Defendant's Assertion that Ecos/Grantec's Tri-Folding Mattresses Have Dual Use as Mattresses and Toppers is Without Record Support

Defendant asserts that the Department correctly found Ecos/Grantec's tri-folding mattresses satisfied the mattress topper exclusion because the tri-folding mattresses "have dual use as a mattress and a topper." Defendant's Br. at 19-22. Defendant, however, failed to cite a scintilla of record evidence to support its assertion that Ecos/Grantec's tri-folding mattresses are marketed as, or function as, mattress toppers. Accordingly, the Court should find that Ecos/Grantec's tri-folding mattresses are mattresses and do not satisfy the mattress topper exclusion.

*First*, Defendant's assertion that Ecos/Grantec's tri-folding mattresses "meet the language of the 'mattress topper' exclusion" because Ecos/Grantec's product brochures "indicate the mattress toppers are portable and can be used, for example, on college dorm room beds and 'stored in a closet or under the bed when not in use'" is unsupported by the record. Defendant's Br. at 18 (citing AQR at Exhibit A-18). Ecos/Grantec's product brochure does not state that the tri-folding mattresses can be used *on* college dorm room beds but rather that the tri-folding mattresses can function *as* college dorm room beds. Specifically, Ecos/Grantec's product brochure provides the following product descriptions of its tri-folding mattresses:

- "4 inch Tri-Folding Memory Foam Mattress-04TM01S"—defined as the "ideal option for visitors, sleepovers, car trips, camping or ***dorm room bed***. ***Portable and comfortable mattress***…complete with supportive memory foam mattress providing soothing sleeping." AQR at Exhibit A-18 (PDF 929) (emphasis supplied).

- "4 inch Tri-Folding Memory Foam Mattress-04TM02T"—defined as the "ideal option for visitors, sleepovers, car trips, camping or ***dorm room bed***. Portable and comfortable mattress." AQR at Exhibit A-18 (PDF 931) (emphasis supplied).

5

- "4 inch Tri-Folding Memory Foam Mattress-04TM02S"—defined as a "supportive memory foam mattress providing soothing sleeping or leisure" that is the "ideal solution to ***temporary sleeping accommodations***. Perfect for unexpected sleep over guests, dorm rooms, camping, traveling or car trips…Portable and comfortable mattress, no pain in the back or neck when people sleep on it." AQR at Exhibit A-18 (PDF 930) (emphasis supplied).

These product descriptions unambiguously describe the function of the tri-folding mattresses as a mattress (*i.e.*, a sleeping surface or a bed) for guests, sleepovers, camping, or dorm rooms. Nowhere in Ecos/Grantec's product brochure are the tri-folding mattresses described as functioning as a supplement to an existing mattress by providing an additional layer of support (*i.e.*, a topper). Indeed, although Ecos/Grantec inconsistently refer to these products as both tri-folding mattresses and tri-folding toppers, Ecos/Grantec universally describe the function of these products as mattresses. *See, e.g.,* AQR at Exhibit A-18 (PDF 933) (labeling the product a "Tri-Folding Topper" but describing its function as "the ideal option for visitors, sleepovers, car trips camping or ***dorm room bed***.") (emphasis supplied). In contrast, Ecos/Grantec do produce actual toppers and market and advertise these products as an "{i}deal choice to improve an existing firm mattress." AQR at Exhibit A-18 (PDF 984).

*Second*, Defendant's assertion that Ecos/Grantec's tri-folding mattresses are "portable and removable" and can "be folded for storage in a closet when not in use" is not relevant to whether such products are toppers. Defendant's Br. at 18 (citing IDM at Comment 3). The defining characteristic and function of a mattress topper is that it is used as a supplement to an existing mattress, not that it is portable and removable. *See* IDM at 4. Indeed, as noted above, the Department has previously found tri-folding mattresses—which are portable, removable, and storable—are subject merchandise. *See* CQR RFI at Exhibit 1 (Final Scope Memorandum) at Comment 2. Therefore, the fact that a tri-folding mattress may be portable, removable, or storable does not demonstrate that it is a topper. At the risk of stating the obvious, all mattresses

6

are portable and removable.

*Third*, the fact that Ecos/Grantec's tri-folding mattresses are produced to sizes that do not correspond to traditional mattresses confirms that the tri-folding mattresses are not toppers. The Department's assertion to the contrary, under the theory that "the definition of excluded mattress toppers contains no requirement that the product must be the same size as a mattress," misses the point. Defendant's Br. at 21-22. A topper is designed to function as a supplement to an existing mattress by providing an extra layer of support. *See* IDM at 4. Therefore, toppers must be produced to mattress sizes to have that function. The record lacks any evidence of the "car trips" or "camping" mattresses for which the tri-folding mattresses are purportedly toppers. Probably because there are none, as the tri-fold mattress is the mattress being sold for those applications.

Ecos/Grantec do produce mattress toppers that correspond to traditional mattress sizes, confirming that those products are mattress toppers. *See* AQR at Exhibit A-18 (PDF 979-987). In contrast, the tri-folding mattresses are not produced to traditional mattress sizes, which means the thick pieces of foam would not cover the entire bed, leaving the surface uneven or requiring multiple, overlapping tri-folding mattresses to cover the length and width of the mattress. Accordingly, Defendant's argument that tri-folding mattresses can function as toppers even though they are not produced to the appropriate size is not supported by record evidence or common sense. *Cf. ArcelorMittal Stainless Belgium N.V. v. United States*, 694 F.3d at 88 (noting that "antidumping orders should not be interpreted in a vacuum devoid of any consideration of the way the language of the order is used in the relevant industry").

### 2. Ecos/Grantec's Inconsistent Product Labeling Does Not Support Finding Tri-Folding Mattresses Function as Toppers

Defendant's assertion "all the tri-fold mattress toppers are identified as mattress toppers in both the brochures and product {specification} sheets" is both incorrect and irrelevant.

Defendant's Br. at 21.

As an initial matter, in the underlying investigation the Department explained that a "product label…does not automatically qualify a product for exclusion, simply based on its name. To be excluded, it must, in fact, meet all of the requirements of the exclusion." CQR RFI at Exhibit 1 (Final Scope Memo) at Comment 2. As discussed above, Ecos/Grantec's tri-folding mattresses are not advertised as, and do not function as, mattress toppers. Therefore, the mere fact that Ecos/Grantec sometimes (and inconsistently) refer to its tri-folding mattresses as toppers does not demonstrate that such products meet the criteria of the mattress topper exclusion. *See* AQR at Exhibit A-18.

Every product code for a tri-folding mattress in Ecos/Grantec's product brochure is referred to as a tri-folding mattress. *See generally* AQR at Exhibit A-18; *see also Brooklyn Bedding, LLC et al's Motion for Judgment on the Agency Record* (May 20, 2024) ("*Mattress Petitioners 56.2 Brief*"), ECF No. 22, at 17-18. Furthermore, Ecos/Grantec's own product coding and [           ] identify these products as mattresses, not toppers. *See* Mattress Petitioners 56.2 Brief at 18 (citing Letter from Ecos/Grantec, "Responses to the Department's December 7th Supplemental Sections A and C Questionnaire and December 14th Supplemental Sections A, D, and E Questionnaire" (Jan. 10, 2023) (P.R. 12-128) (C.R. 134) at Exhibit SC-4). Accordingly, even if the Court were to find that Ecos/Grantec's product labeling was relevant, record evidence unequivocally demonstrates that Ecos/Grantec identify its tri-folding mattresses as mattresses, further undermining the Department's determination that such products satisfy the mattress topper exclusion.

### 3. The Department's Prior Scope Determination that Tri-Folding Mattresses are Subject Merchandise Applies to Ecos/Grantec's Tri-Folding Mattresses

As noted above, in the underlying investigation, the Department held that tri-folding mattresses are mattresses as defined in the scope and therefore are subject merchandise. *See* CQR RFI at Exhibit 1 (Final Scope Memo) at Comment 2. The Department's scope determination in the underlying investigation is directly applicable and controlling here insofar as there is no difference, apart from thickness, between the tri-folding mattresses evaluated in the investigation and Ecos/Grantec's tri-folding mattresses evaluated in the first administrative review. *Compare* CQR RFI at Exhibit 1 (Final Scope Memorandum) at Comment 2, *With* AQR at Exhibit A-18 (PDF 929-934). Defendant's assertion that the difference in thickness is sufficient to distinguish the Department's prior scope analysis, Defendant's Br. at 19-20, fails to recognize that a height of 4 inches or less is a necessary, but insufficient, condition for satisfying the mattress topper exclusion because mattresses can also be 4 inches. IDM at Comment 4; *see also Mattress Petitioners 56.2 Brief* at 10-22. Accordingly, the mere fact that Ecos/Grantec's tri-folding mattresses are 4 inches does not itself render them mattress toppers.

### 4. Ecos/Grantec's Tri-Folding Mattresses are Mattresses

In summary, Defendant's assertion that Ecos/Grantec's tri-folding mattresses have the dual function of mattress and topper is not supported by record evidence. Defendant failed to cite a single piece of evidence demonstrating that Ecos/Grantec advertise its tri-folding mattresses as toppers. Moreover, Ecos/Grantec do not produce the tri-folding mattresses to standard mattress sizes, confirming that they cannot functionally be used as a topper. Finally, The Department's prior scope determination finding that tri-folding mattresses are subject merchandise is directly applicable here. Accordingly, the Court should remand this matter to the Department with

instruction to find that Ecos/Grantec's tri-folding mattresses do not satisfy the topper exclusion and, therefore, are subject merchandise.

### III. CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that this Court find the Department's determination that Ecos/Grantec's tri-folding mattresses and foam mattress floor sofas satisfied the requirements for exclusion from the *Order* to be unsupported by substantial evidence and remand this matter to the agency consistent with the arguments above.

Respectfully submitted,

/s/ Yohai Baisburd

Yohai Baisburd
Chase J. Dunn
Nicole Brunda

CASSIDY LEVY KENT (USA) LLP
2112 Pennsylvania Ave. NW
Suite 300
Washington, D.C. 20037
(202) 567-2300

*Counsel to Brooklyn Bedding, LLC, et al.*

Date:   September 25, 2024

Consol. Court. No. 24-00001

## Certificate of Compliance

The undersigned hereby certifies that the forgoing submission of "Mattress Petitioners' Reply Brief," filed by Plaintiffs, Mattress Petitioners, on September 25, 2024, contains 2,752 words, including footnotes, and excluding the table of contents, table of authorities, and signature block, and therefore, complies with the maximum 7,000-word limitation set forth in the Standard Chambers Procedures.

BY: /s/ Yohai Baisburd